GENERAL ELECTRIC CREDIT AUTO LEASE, INC., Plaintiff, v. ROBERT J. JANKUSKI *et al.*, Defendants and Counterplaintiffs-Appellants (Fireside Chrysler-Plymouth, Inc., Defendant and Counterdefendant-Appellee).

First District (1st Division)   No. 88—0318

Opinion filed December 12, 1988.

Maurice A. Winkler, of Chicago, for appellants.

Marks, Marks & Kaplan, Ltd., of Chicago (Gilbert W. Gordon, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

General Electric Credit Auto Lease, Inc. (GECAL) filed suit in the circuit court of Cook County against Robert and Ann Jankuski and Fireside Chrysler-Plymouth, Inc. (Fireside), for breach of contract concerning an auto lease.[1] The Jankuskis filed a countercomplaint against Fireside for fraud in the inducement. Fireside moved to dismiss the Jankuskis' second amended countercomplaint for failure to state a cause of action. The circuit court dismissed the Jankuskis' counterclaim with prejudice, and further, entered a finding that no just reason existed to delay enforcement or appeal of its order. The Jankuskis now appeal from that ruling.

The Jankuskis' second amended countercomplaint alleged the following: On April 8, 1984, the Jankuskis went to Fireside to purchase an automobile for their son, Robert Jr., who, at the time, was a member of the United States Armed Services and stationed in New York.

---

[1]The lease upon which GECAL's suit is based was initially entered into between Fireside and the Jankuskis. Fireside, however, had a lease plan agreement with GECAL whereby GECAL, in fact, purchased the lease from Fireside. Thus, the action by GECAL was brought against the Jankuskis to recover the amount due for the breach of their lease agreement with Fireside for the vehicle and against Fireside for the breach of the agreement between GECAL and Fireside under the lease plan agreement. We also note that GECAL's claim against Fireside was based upon allegations of fraudulent misrepresentations made to the Jankuskis, the same allegations which form the basis for the Jankuskis' countercomplaint against Fireside.

They indicated that they wanted to lease a car, a 1984 Chrysler Laser, for their son, Robert Jr., who would, within a few days, execute a lease for the automobile. Additionally, the Jankuskis informed Fireside of the possibility that, during the term of the lease, Robert Jr. could be shipped overseas, outside of the continental United States. The representative of Fireside advised the Jankuskis that in order for Fireside to hold that particular vehicle, the Laser, until Robert Jr. actually executed the lease, the Jankuskis would have to sign a "holding agreement" for the Laser, which would be denominated as a lease agreement for a term of four years. However, the representative told the Jankuskis that when Robert Jr. came in to execute the lease, the "holding agreement" would become null and void and Robert Jr.'s lease would be the only effective agreement in existence. This representative further informed the Jankuskis that the "holding agreement" which they were to sign would impose no personal liability on either of them. As a result of these alleged misrepresentations, the Jankuskis then signed the lease on April 8, 1984. Furthermore, the Jankuskis asserted that the representative also told them that their son, Robert Jr., could not remove the vehicle from the continental United States, but, if he were transferred overseas, the Fireside representative said that the vehicle could then be returned to Fireside and that Robert Jr.'s lease would be cancelled. The representative stated that no further obligation would accrue to anyone by virtue of the terms of the lease agreements.

On April 10, 1984, Robert Jr. signed and executed a lease agreement with Fireside for the same vehicle which had previously been the subject of the form type lease or "holding agreement" earlier signed by his parents. Robert Jr. made all required lease payments on the vehicle until March 1, 1985, at which time he was transferred overseas. Thereafter, the vehicle was returned to Fireside, and, at that time, the Jankuskis alleged that they believed that all their obligations had been terminated.

The complaint further asserted that Fireside never meant to use the agreement as a "holding agreement," but that Fireside's false and fraudulent representations were intended only to induce the Jankuskis to enter into the "holding agreement," which Fireside actually intended to be a lease agreement. Finally, they alleged that Fireside always intended to turn their lease over to GECAL under Fireside's lease plan agreement, and that Fireside's representations were fraudulent and calculated to deceive and induce the Jankuskis into executing the so-called "holding agreement" which, as contended, was to be an additional lease document that, contrary to Fireside's asser-

tions, would not be cancelled when their son executed his lease.

Initially, after the Jankuskis' first countercomplaint was filed, Fireside moved to dismiss it for failure to state a cause of action under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). That motion was granted without prejudice, and the Jankuskis filed an amended countercomplaint. Fireside again moved to dismiss under section 2—615, and that motion was also granted without prejudice. The Jankuskis then filed a second amended countercomplaint, and Fireside again moved to dismiss under section 2—615. The trial court granted Fireside's motion and the second amended countercomplaint, as stated above, was dismissed with prejudice, denying the Jankuskis any further leave to amend. The Jankuskis now appeal this dismissal of their second amended countercomplaint.

■■ The issue in this appeal is whether the second amended countercomplaint alleged a set of facts which, if assumed to be true, stated a cause of action for fraud in the inducement. The trial court found it did not and dismissed the second amended countercomplaint pursuant to section 2—615 of the Code of Civil Procedure for failure to state a claim upon which relief can be granted. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) However, a cause of action must not be dismissed on the pleadings unless it clearly appears that no possible set of facts exists which will entitle the plaintiff to recovery. (*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 286, 499 N.E.2d 1319, 1322.) Where a motion to dismiss is filed pursuant to section 2—615 for failure to state a cause of action, all well-pleaded facts must be taken as true and any reasonable inferences drawn from those allegations must necessarily be construed liberally in favor of the complainant, because the motion to dismiss merely tests the legal sufficiency of the allegations; it is not a determination on the merits of the claim. See *Hester*, 114 Ill. 2d at 286, 499 N.E.2d at 1322; *Bishop v. Ellsworth* (1968), 91 Ill. App. 2d 386, 391, 234 N.E.2d 49, 52; Ill. Rev. Stat. 1987, ch. 110, par. 2—615.

■■ Both parties argue that to state a cause of action for fraud, a plaintiff must assert: (1) that the defendant made a statement; (2) of a material nature; (3) which was untrue; (4) known by the person making it to be untrue, or made in culpable ignorance of its truth or falsity; (5) relied on by the victim to his detriment; (6) made for the purpose of inducing reliance; and (7) the victim's reliance led to his injury. (*Brainerd v. Balish* (1987), 164 Ill. App. 3d 836, 841, 518 N.E.2d 317, 320; see also *Smith v. Jones* (1986), 113 Ill. 2d 126, 133-34, 497 N.E.2d 738, 741.) Further, a person claiming to be a victim of

fraud may also contend that he or she was induced to enter into the contract as a result of fraud and, accordingly, ask to have the contract rescinded and restitution ordered, *i.e.*, seek to place the parties in the positions they would have been in had they never entered into the contract. (*Sciarabba v. Chrysler Corp.* (1988), 173 Ill. App. 3d 57, 61-62, 527 N.E.2d 368, 371.) This is what the Jankuskis requested in their counterclaim.

■ "Promissory fraud" is a form of fraud based upon a false representation of intent concerning future conduct, *e.g.*, a promise to perform a contract when there is actually no intent to perform the contract. (*Stamatakis Industries, Inc. v. King* (1987), 165 Ill. App. 3d 879, 881-82, 520 N.E.2d 770, 772.) As a general rule, promissory fraud, based on future acts, is not actionable in Illinois unless the promise is a part of a "scheme" to defraud. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 334, 371 N.E.2d 634, 641.) The distinguishing features of a "scheme," however, are not clear in Illinois case law, and the exception, therefore, seems to engulf the general rule because, "[a]s fraud occurs when a misrepresentation is made with intent to induce a victim to rely thereon and a victim is deceived and relies thereon to his detriment, such misrepresentations are ordinarily the schemes by which the victim is defrauded regardless of whether the misrepresentation is as to the declarant's future intent or otherwise." *Vance Pearson, Inc. v. Alexander* (1980), 86 Ill. App. 3d 1105, 1112, 408 N.E.2d 782, 787; see also *Naiditch v. Shaf Home Builders, Inc.* (1987), 160 Ill. App. 3d 245, 512 N.E.2d 1027, *appeal denied* (1987), 117 Ill. 2d 545, 517 N.E.2d 1088.[2]

This court, in *Stamatakis*, noted that in *Vance Pearson*, an actionable scheme existed where the defendant promised to install a scale by a certain date with no intent to keep that promise. (*Stamatakis*, 165 Ill. App. 3d at 883, 520 N.E.2d at 773; *Vance Pearson*, 86 Ill. App. 3d 1105, 408 N.E.2d 782.) The *Stamatakis* court then went on to hold that the plaintiff's allegations in its complaint, that the defendant's promises to make good on a contract for the purchase of equipment when he knew the company could not pay, as well as his promise to enter into an employment contract for five years with a

---

[2]A prediction of events to occur in the future is normally regarded as a statement of opinion, on which a party cannot rely, while a statement of intent, on the other hand, whether of the speaker or another, is normally regarded as a statement of fact on which a party may rely. Thus, it is generally held by most courts, as noted in Prosser & Keaton on Torts, that a misrepresentation of a mature fact and a promise made without the intent to perform constitute a sufficient basis for an action. See *W. Prosser & W. Keaton, Torts* §109 (5th ed. 1984).

covenant not to compete when he intended not to perform, properly alleged a scheme against plaintiff, and that the actual existence of a scheme was a question for the trier of fact. (*Stamatakis*, 165 Ill. App. 3d 879, 520 N.E.2d 770.) Similarly, in *Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 457 N.E.2d 1335, this court, on appeal after trial, found that a landlord's assurance to a tenant that everything would be taken care of prior to the tenant taking possession, in addition to a later statement that everything was taken care of, constituted a scheme. *Carter*, 120 Ill. App. 3d at 319-20, 457 N.E.2d at 1340.

In the present case the Jankuskis claim that their second amended countercomplaint sets forth material, fraudulent and deceitful statements made by Fireside to induce them into executing the "holding agreement." They claim that these allegations state a claim for fraud, and that, therefore, the "holding agreement" lease may be rendered voidable at the option of the injured party. They also argue that certain issues raised by Fireside, such as the admissibility of parol evidence, are not applicable to this appeal since the appeal only properly involves the allegations of the complaint. Matters such as the propriety of admitting parol evidence, they assert, are to be determined at trial, and, hence, their complaint should not be dismissed on that basis. Furthermore, they claim, and we agree, that evidence outside the terms of a written contract is properly admissible to prove an action based on fraud.

Fireside, on the contrary, claims that the Jankuskis have not stated a cause of action for fraud because they had no right to rely on any alleged misrepresentations here. Nowhere in the complaint, Fireside argues, do the Jankuskis allege that they were denied the opportunity to read the lease or that they were in any way impaired so that they could not inform themselves of the contents of the lease. Fireside also asserts that the alleged fraud is not actionable because the claimed misrepresentations merely refer to an intent to perform future acts. Additionally, Fireside contends, oral representations cannot be considered because such representations are inadmissible as evidence to contradict the written terms of the contract.

We disagree with Fireside and find that the Jankuskis have stated a cause of action for promissory fraud in the inducement. In considering a section 2—615 motion to dismiss, a court must strictly construe the pleadings in favor of the nonmovant, and, in order to grant the motion to dismiss, there must exist no possible set of facts under which the nonmovant could recover. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) The second amended countercomplaint here ade-

quately sets forth the required elements for a fraud action. The absence of an allegation that the Jankuskis were denied the opportunity to read the lease is not a necessary element to state a cause of action for fraud in the inducement. The inference from the allegations set forth here clearly indicates that the Jankuskis relied upon Fireside's fraudulent representations that the terms of the "holding agreement" lease would be cancelled when their son executed the same or similar lease for the automobile. The Jankuskis' allegations thus establish a fraudulent scheme whereby Fireside never intended to cancel the "holding agreement" lease, and instead attempted to use the Jankuskis' lease as a guarantee against their son leaving the country and terminating the lease early, despite Fireside's representations to the contrary.

■ Finally, Fireside contends that the Jankuskis had no right to rely on the representations of its agent. However, the Jankuskis have properly alleged reliance on the asserted misrepresentations and that is enough to survive a motion to dismiss under section 2—615. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) The right to rely may, of course, properly become a fact issue at some later point in the litigation after evidence has been presented of facts and circumstances surrounding the execution of the "holding agreement" lease, but here, sufficient facts have been asserted which would entitle the plaintiffs to recover if not controverted. Fireside's argument is improperly based on cases where the right to rely was raised on appeal after evidence was presented in a trial of the case. Hence, these cases are inapposite here, since no evidence has been presented as the case has not progressed beyond the initial pleading stage. (See *Allensworth v. Ben Franklin Savings & Loan Association* (1979), 71 Ill. App. 3d 1041, 389 N.E.2d 684; *Hurley v. Frontier Ford Motors, Inc.* (1973), 12 Ill. App. 3d 905, 299 N.E.2d 387.) Any questions pertaining to admissibility of evidence, as noted earlier, are matters to be determined by the trier of fact at a later point in the litigation.

■ Additionally, parol evidence on the allegation of fraud in the inducement, such as that alleged in the countercomplaint, is admissible to prove the fraud, and Fireside does not dispute this well-settled point of law. (See *Bank of Naperville v. Holz* (1980), 86 Ill. App. 3d 533, 407 N.E.2d 1102.) Fireside's argument to the contrary is not reasonable. If we were to accept Firestone's contention that parol evidence would be inadmissible in this type of case, a claimant would never be able to allege a cause of action for fraud in the inducement because allegations of facts or circumstances which induced the claimants to enter into such contracts always go beyond the four corners of

the contract. The Jankuskis have properly alleged a cause of action against Fireside based on Fireside's fraudulent scheme to induce the Jankuskis to enter into the "holding agreement" lease, which the Jankuskis believed would be voided upon their son's execution of his lease with Fireside.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded with directions that defendant Fireside's motion to dismiss be denied, that Fireside be allowed 28 days within which to file its answer to the Jankuskis' second amended countercomplaint, and for other proceedings consistent with this opinion.

Reversed and remanded with directions.

MANNING and O'CONNOR, JJ., concur.