Third Division

June 18, 1997

No. 1-96-1073

BILL DOHERTY, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellant, ) COOK COUNTY

)

v. ) 

)

PETER KAHN, PATRICK DRISCOLL, ) No. 94 CH 6157

JEFF RANDALL, ROBERT MODDER, )

GLEN REGAL LANDSCAPING, INC.,    ) 

) THE HONORABLE

) LORETTA C. DOUGLAS

Defendants-Appellees. ) JUDGE PRESIDING.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Bill Doherty filed a complaint against defendants, Peter Kahn (Kahn), Patrick Driscoll (Driscoll), Jeff Randall (Randall), Robert Modder (Modder), and Glen Regal Landscaping.  The 12-count complaint alleged that plaintiff owned a landscaping business and the defendants offered plaintiff the opportunity to form a new landscaping business with defendants, called Glen Regal Landscaping.  The complaint alleged, 
inter alia
, that, in exchange for plaintiff's employees, his landscaping equipment, as well as his existing accounts, plaintiff would become president of the new company, be awarded 65% of the stock, and paid $5,000 per month. The complaint further alleged that, although plaintiff accepted the offer and performed his obligation under the agreement, he only received $2,000 or $3,000 a month. Defendants also reduced his stock to 25% and decided in a meeting that plaintiff would no longer be president of the company.  Moreover, the complaint alleged that defendants terminated plaintiff because he refused to engage in illegal activity.  After his termination, plaintiff was unable to secure work because defendants had defamed him to the clients and had refused to return plaintiff's equipment.  Plaintiff alleged that, because of defendants' actions, he has continued to lose income, business, and revenue, and he has suffered severe and intense emotional distress.  Defendants filed motions to dismiss the complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code)(735 ILCS 5/2-615, 2-619(West 1992)), which the trial court granted.  On appeal, plaintiff contends that the trial court erred in dismissing his actions for: (1) securities fraud; (2) defamation; (3) tortious interference with contract and/or prospective economic advantage; (4) back pay based on the Illinois Wage Payment and Collection Act (820 ILCS 115/1 
et seq.
 (West 1992)); (5) retaliatory discharge; (6) breach of fiduciary duties; (7) breach of contract; (8) fraud; (9) conversion; (10) damages under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 
et seq.
 (West 1992)); and (11) intentional infliction of emotional distress.  The trial court did not dismiss plaintiff's breach of employment contract claim; therefore, it is not a part of the appeal.

BACKGROUND

Plaintiff alleged in his second amended complaint that, for several years prior to May 1993, he ran his own landscaping company, Doherty Landscaping. In early 1993, plaintiff was approached by Kahn and Driscoll, both of whom who ran (and continue to run) a property management company called Creative Property Management (Creative). Kahn and Driscoll told plaintiff that Creative managed several townhome and condominium associations and that they contracted with outside landscapers to landscape the grounds of those townhome and condominium associations. They further told plaintiff that they thought it would be a profitable endeavor to bring landscaping "in house" and to form their own landscaping company to service the associations managed by Creative.

Plaintiff also alleged that Kahn and Driscoll asked plaintiff to join them and explained that they would handle all the "financial and administrative details" so that plaintiff could focus on the client development, sales and operations. They also told plaintiff he would be the "President" of the company and own 65% of the stock (Kahn, Driscoll, and Modder would split the remaining 35% of the stock). Plaintiff was to be paid $5,000 per month salary. In exchange for these promises, plaintiff agreed to this arrangement and became a part of the new company, called Glen Regal.

Plaintiff brought his existing staff, all his landscaping equipment, as well as his main client, Gatewood Condominium Association, to the new company, Glen Regal. Several of the associations managed by Creative were landscaped by plaintiff in his capacity as the president of Glen Regal, including those known as Dunbar, Westlake, Copper Oaks and Sarah's Grove.  Plaintiff alleged that, by October 1993, he was not receiving the $5,000-per-month salary he had been promised, but was receiving only $2,000 or $3,000. Plaintiff made repeated demands for his back pay and was repeatedly promised by defendants that he would receive the money.

In approximately March 1994, Kahn and Driscoll held a board of directors meeting at which they decided to reduce plaintiff's stock ownership to 25%, voted him out as the president of the company, and revoked his check-signing privileges on behalf of Glen Regal. Plaintiff never consented to any of these decisions.

Plaintiff further alleged that, in April 1994, defendants asked him to assist Glen Regal in violating a covenant not to compete with Glass Landscaping (Glass). Jeff Randall was a former employee of Glass. Upon leaving Glass, Randall was sued pursuant to a covenant not to compete with Glass. Randall then became an officer of Glen Regal. Pursuant to the covenant with Glass, however, Randall could not solicit landscaping clients within 10 miles of the city limits of Rozelle, Illinois, for the next three years. The terms of this covenant extended to Glen Regal. Kahn and Randall approached plaintiff and told him that he should perform the landscaping at various locations and townhomes that were within 10 miles of Rozelle and, therefore, subject to Randall's covenant not to compete with Glass. The rationale, as explained by Kahn and Randall, was that plaintiff would not be recognized by anybody and they would never know that Glen Regal was doing the landscaping in violation of the covenant. Plaintiff was instructed to use unmarked trucks, and, if asked who he was, plaintiff was to say he was with "Palatine Enterprises" or make up some similar name. 

Plaintiff alleged that he refused to engage in these illegal and improper efforts to circumvent the covenant. When he told defendants he would not engage in such a conspiracy to violate the law, he was told that he was "not a team player," that he was "stupid," and that he was costing Glen Regal over $70,000. 

Shortly thereafter, in May 1994, plaintiff was locked out of the yard, which was the location where Glen Regal kept all its landscaping equipment. Glen Regal refused to return to plaintiff any of the landscaping equipment locked in the yard, which he had brought to the company as part of his agreement to join up with defendants. Moreover, plaintiff alleged that he was no longer being paid. Glen Regal also "kept" the staff plaintiff brought to Glen Regal (and because plaintiff did not possess any landscaping equipment or a company, the staff stayed with Glen Regal).

Plaintiff also alleged that, when the members of the board of directors of the Sarah's Grove and Dunbar associations asked where plaintiff was, and indicated they wanted to "go" with plaintiff, Kahn and Driscoll said that he was fired because, among other things, plaintiff was "lazy," "incompetent," and "could not do his job or what was expected of him." 

Plaintiff alleged that he lost Gatewood, the client he originally brought with him to Glen Regal, because he could not perform mowing and landscaping services as a result of being unable to access any of his equipment. He also alleged that the Sarah's Grove association had decided they wanted plaintiff to continue performing landscaping services for them, and they even sent a letter to Glen Regal stating that they were terminating Glen Regal pursuant to the 30-day termination clause in their contract. Plaintiff, however, was unable to perform the Sarah's Grove job because he lacked equipment and, because he was not being paid, he did not have the money to buy new equipment.

Plaintiff further alleged that he was supposed to sign a $900,000 contract with another association, but because he didn't have any staff or equipment, he was unable to sign the contract and lost a total of $200,000 in profits over the next three years. Plaintiff alleged that he continues to lose income, business and revenue as a result of the fact that he must turn away business because defendants illegally retained his landscaping equipment. Plaintiff alleged that, as a result of defendants' actions, he suffered severe and intense emotional distress. 

Defendants filed a motion to dismiss plaintiff's second amended complaint pursuant to sections 2-615 (735 ILCS 5/2-615 (West 1992)) and 2-619 (735 ILCS 5/2-619 (West 1992)) of the Illinois Code of Civil Procedure. Following oral argument on defendants' motion to dismiss, the trial court found as follows: counts I (violation of securities fraud), II (defamation), V (violation of Illinois Wage Payment and Collection Act (820 ILCS 115/1 
et seq
. (West 1992)), VI (retaliatory discharge), X (conversion), XI (violation of Consumer Fraud Act (815 ILCS 505/2 
et seq
. (West 1992)) and XII (intentional infliction of emotional distress) were dismissed with prejudice as to all defendants; counts VII (breach of fiduciary duty), VIII (breach of contract) and IX (fraud) were dismissed with prejudice as to Randall and Modder and without prejudice as to the remaining defendants; count III (interference with contract and prospective economic advantage) was dismissed without prejudice; and count IV (breach of employment contract) was not dismissed. 

Plaintiff was given until February 20, 1996, to replead those counts that were dismissed without prejudice. On February 20, 1996, plaintiff voluntarily dismissed count IV, decided not to replead those counts that were dismissed without prejudice, and  elected to stand on counts III, VII, VIII and IX as pled in the second amended complaint. Accordingly, the dismissals of counts III, VII, VIII and IX were converted to "with prejudice" and a final order was entered on February 20, 1996, disposing of all counts as to all defendants. No post-judgment motions were filed. Plaintiff appeals. 

We affirm. 

ANALYSIS

I

In considering a motion to dismiss, a reviewing court must accept as true all well-pleaded facts alleged in the complaint and all reasonable inferences that can be drawn from those facts. 
Wieseman v. Kienstra, Inc.
, 237 Ill. App. 3d 721, 722, 604 N.E.2d 1126 (1992); 
Eisenbach v. Esformes
, 221 Ill. App. 3d 440, 442, 582 N.E.2d 196 (1991).  The granting of a motion to dismiss is within the trial court's sound discretion and will not be reversed unless that discretion is abused.  
Eisenbach
, 221 Ill. App. 3d at 442.  

Plaintiff first contends that he stated a cause of action for securities fraud pursuant to sections 12(F), (G), and (I) of the Illinois Securities Law of 1953 (the Securities Act)(815 ILCS 5/12(F), (G), (I)(West 1992)) against Kahn, Driscoll, Modder, and Glen Regal.  These sections state:

"It shall be a violation of the provisions of this Act for any person:

* * *

F.  To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof.

G.  To obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

* * *

I.  To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly." 815 ILCS 5/12(F), (G), (I)(West 1992). 

Defendants argue that the trial court properly dismissed this claim because the transaction upon which plaintiff based his cause of action was not the sale of a security.  Defendants also argue that, as an affirmative matter, section 8-319 of the Uniform Commercial Code (the UCC)(810 ILCS 5/8-319 (West 1992)) bars plaintiff's claim under the Securities Act.  We will first address whether the Securities Act applies to the instant action.

The Illinois Securities Law of 1953 defines "security" as:

"any note, stock, treasury stock ***, or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to 

subscribe to or purchase, any of the foregoing." 815 ILCS 5/2.1 (West 1992). 

In determining whether an instrument or a transaction is a security under the statute, form is not to be regarded over substance.  
Boatmen's Bank v. Durham
, 203 Ill. App. 3d 921, 927, 561 N.E.2d 206 (1990).  The substance of the transaction, the relationship between the parties, and economic reality determine whether a transaction involves a security and whether a purchaser is entitled to protection afforded by registering or reporting an instrument pursuant to the securities laws.  
Boatmen's Bank
, 203 Ill. App. 3d at 927.  

Furthermore, both the Illinois and the federal courts have emphasized that a security within the meaning of the securities laws is a contract, transaction or scheme whereby one person invests his money in a common enterprise on the theory that he expects to receive profits solely from the efforts of others.  
Boatmen's Bank
, 203 Ill. App. 3d at 927; see 
Sire Plan Portfolios, Inc. v. Carpentier
, 8 Ill. App. 2d 354, 357, 132 N.E.2d 78 (1956); 
Securities & Exchange Comm'n v. Howey Co.
, 328 U.S. 293, 301, 90 L. Ed. 1244, 1251, 66 S. Ct. 1100, 1104 (1946).  In 
Polikoff v. Levy
, 55 Ill. App. 2d 229, 204 N.E.2d 808 (1965), the court stated:  

"The reason for excluding from the scope of the securities laws those transactions in which the profits do not come solely from the efforts of others is clear.  In such situations, the member of the enterprise pools his money with that of others in the group; he has an equal right of 

control over the project and the opportunity and right to know what is going on.  Because of this, the protection of the full disclosure offered by registration is not needed as it is in cases involving a nonparticipating investor." 
Polikoff
, 55 Ill. App. 2d at 234.

We believe that 
Condux v. Neldon
, 83 Ill. App. 3d 575, 404 N.E.2d 523 (1980), is instructive.
 In 
Condux
, the defendant owned all the stock of a retail business. He sold the business to two plaintiffs, who took the business and operated it for over two years.  Dissatisfied with the results, they sued to rescind the sale, claiming it was a sale of unregistered securities, in violation of the Illinois Securities Law of 1953.  The court held that the transaction did not constitute the sale of securities.  In particular, the court stated:

"The sale of stock to a buyer or small group of affiliated buyers who are to share in the control and management of the corporation, whether personally or through a nominee independent of the seller, is not a sale of securities. Such a transaction is no more than the outright sale of the business, as here, or, if the seller retains a part interest, the creation of a partnership in corporate form.  In such a transaction the corporation and the stock are incidental." 
Condux
, 83 Ill. App. 3d at 585.  

Therefore, the court concluded that the securities laws did not apply.  
Condux
, 83 Ill. App. 3d at 585.

In the instant case, it is clear from the complaint that the transaction between the plaintiff and defendants did not involve the sale of securities within the meaning of the Securities Act.  According to the complaint, plaintiff was president of the business and was responsible for client development, sales, and operations.  Plaintiff shared in the control and management of the business, and profits were not solely from the effort of others.  Thus, the transaction for the sale of stock in the business was not a sale of securities but, rather, a creation of a partnership in a corporate form.  In view of this holding, we need not reach the issue of whether the oral agreement for the sale of stock was barred by the UCC.

II

Plaintiff next contends that the trial court erred in dismissing his claim for defamation.  Defendants moved to dismiss the claim pursuant to section 2-615 of the Code.  735 ILCS 5/2-615 (West 1992).  The trial court dismissed the claim, stating that, as a matter of law, plaintiff failed to state a cause of action for defamation.

Plaintiff alleges in his complaint that, after his termination, plaintiff sought to compete with defendants and secure the landscaping business of certain townhome and condominium associations.  However, plaintiff was unable to secure the work because defendants had told these potential customers that plaintiff was "incompetent," lazy," "dishonest," "cannot manage a business," "dishonest," and/or "lacks the ability to perform landscaping services."  Plaintiff argues that these statements are defamatory 
per se
.  

Words are considered defamatory 
per se
 if they: "(1) impute the commission of a criminal offense; (2) impute infection with a loathsome communicable disease; (3) impute inability to perform or want of integrity in the discharge of duties of office or employment; or (4) prejudice a party, or impute lack of ability, in his trade, profession or business."  
Mittelman
 v. Witous
, 135 Ill. 2d 220, 238-39, 552 N.E.2d 973 (1989).  To be considered defamatory 
per se
, the challenged statement must be so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary.  
Anderson v. Vanden Dorpel
, 172 Ill. 2d 399, 411-12, 667 N.E.2d 1296 (1996).  

However, even if the challenged statement fits within one of the recognized categories that will sustain a 
per se
 action, recovery will not be allowed if the statement can reasonably be given an innocent construction. 
Kolegas v. Heftel Broadcasting Corp.
, 154 Ill. 2d 1, 10, 607 N.E.2d 201 (1992).  The innocent construction rule states that "a written or oral statement is to be considered in context with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, it cannot be actionable 
per se
."  
Chapski v. Copley Press
, 92 Ill. 2d 344, 352, 442 N.E.2d 344 (1982).

The innocent construction rule apples only to actions for defamation 
per se
.  
Mittelman v. Witous
, 135 Ill. 2d at 232-33.  "The rigorous standard of the modified innocent construction rule favors defendants in 
per se
 actions in that a nondefamatory interpretation must be adopted 
if
 it is 
reasonable
.  The tougher standard is warranted because of the presumption of damages in 
per se
 actions." (Emphasis in original.) 
Mittelman
, 135 Ill. 2d at 234. Whether a statement is capable of an innocent construction is a question of law.  
Chapski
, 92 Ill. 2d at 352.

Plaintiff argues that the statements made to certain third parties cannot be innocently construed.  He relies on several cases to support his argument.  Plaintiff first relies on 
McGuire v. Jankiewicz
, 8 Ill. App. 3d 319, 290 N.E.2d 675 (1972).  In 
McGuire
, the court held that the statement "you could not have chosen a worse attorney" was actionable defamation because it had the effect of placing plaintiff as the least competent of licensed practicing attorneys.  The court concluded that the statement imputed a want of capacity by the plaintiff in the legal profession and, as such, prejudiced plaintiff by disparaging his professional reputation. 
McGuire
, 8 Ill. App. 3d at 320.  

Plaintiff also relies on 
Quality Granite Construction Co. v. Hurst-Rosche Engineers, Inc.
, 261 Ill. App. 3d 21, 632 N.E.2d 1139 (1994).  In 
Quality Granite
, an insurance company stated in a letter that a construction company may be considered in default because of the contractor's failure to complete the project in a timely manner, substandard workmanship, reluctance to complete items and inability to interpret correctly the contract documents, plans and specifications as bid.  The court held that the statements could not be innocently construed because, in the context in which it was written, the letter clearly accused the contractor of professional incompetence.  
Quality Granite
, 261 Ill. App. 3d at 27.  

Plaintiff also relies on 
Welch v. Chicago Tribune Co.
, 34 Ill. App. 3d 1046, 340 N.E.2d 534 (1975).  In 
Welch
, a notice distributed in an office stating that plaintiff's termination was due to alcoholism was held to be defamation 
per se
 and not subject to the innocent construction rule because there were no surrounding circumstances that would make an innocent construction of the memorandum possible. 
Welch
, 34 Ill. App. 3d at 1053. 

Defendants, on the other hand, assert that the statements can be innocently construed because the statements were made only in the context of plaintiff's position with Glen Regal Landscaping and in the context of his performance and/or termination as an employee of Glen Regal.  Defendants cite several cases to support their argument.  Defendants first rely on 
Anderson v. Vanden Dorpel
, 172 Ill. 2d 399, 667 N.E.2d 1296 (1996).  In 
Anderson
, the supreme court held that an employer's statement that the plaintiff-employee did not follow up on assignments could be innocently construed to mean simply that the plaintiff did not fit in with the organization of the employer making the assessment and failed to perform well in that particular job setting, and not as a comment on her ability to perform in other, future positions.  
Anderson
, 172 Ill. 2d at 413.

Defendants also rely on 
Valentine v. North American Co.
 for Life & Health Insurance
, 60 Ill. 2d 168, 328 N.E.2d 265 (1974), and 
Taradash v. Adelet/Scott-Fetzer Co.
, 260 Ill. App. 3d 313, 628 N.E.2d 884 (1993).  In 
Valentine
, the court held that the statement that the plaintiff was "a lousy agent" could be innocently construed.  The statement could mean that the plaintiff did not properly or satisfactorily represent the company and that there had been a "lousy or generally unsatisfactory agency relationship."  The court concluded that the statement in context did not necessarily imply plaintiff's lack of qualifications or skill in his calling.  
Valentine
, 60 Ill. 2d at 171.  In 
Taradash
, the court considered a comment that an employee was terminated for "lack of performance" and concluded that the remark was subject to an innocent construction.  The court noted the variety of possible reasons for the employee's lack of performance, including conditions in the industry, the assessment of his performance against unrealistic standards, and the existence of some other conflict preventing the employee from meeting the employer's standards.  
Taradash
, 260 Ill. App. 3d at 317-18.

In the case 
sub judice
, we do not believe that plaintiff's allegations of defamatory statements plead specific and sufficient facts to state a cause of action.  Illinois law is clear that a cause of action for defamation must set forth the statements about which the plaintiff complains with specificity. See 
Heying v. Simonaitis
, 126 Ill. App. 3d 157, 163, 466 N.E.2d 1137 (1984).  Where the complaint fails to set forth specifically what statements were communicated, it is impossible for the court to determine whether the statements give rise to a cause of action.  
Heying
, 126 Ill. App. 3d at 163.  Here, plaintiff's complaint lists conclusory statements that were 
possibly
 made to third parties, as evidenced by his use of "and/or" in his allegations.  Furthermore, plaintiff does not specifically identify which statement was made by which defendant and to whom.  Therefore, we hold that the statements were not set forth with the requisite specificity to state a cause of action for defamation. 

Notwithstanding our holding that plaintiff failed to set forth specific facts, we do not believe that the statements alleged in the complaint stated a cause of action for defamation.  We believe that defendants' alleged statements were mere expressions of opinion.  The distinction between fact and opinion is a matter of law.  
Ollman v. Evans
, 750 F.2d 970, 978 (D.C. Cir. 1984).  Although mere opinions are not actionable, mixed expressions of opinion and fact are actionable.  
Mittelman
, 135 Ill. 2d at 242. To determine whether a statement is fact or opinion, a court must evaluate the totality of circumstances and should consider whether the statement is capable of objective verification as true or false.  
Piersall v. Sportsvision of Chicago
, 230 Ill. App. 3d 503, 510, 595 N.E.2d 103 (1992).  

Plaintiff argues that the statements were mixed expressions of fact and opinion and, thus, were actionable defamation.  Plaintiff again relies on 
Quality Granite
 to support his argument.  In 
Quality Granite
, the court held that the letter impugning plaintiff's ability to perform contained mixed expressions of opinions and facts and the facts were subject to verification.  Defendants rely on 
Piersall
 and 
Kakuris v. Klein
, 88 Ill. App. 3d 597, 410 N.E.2d 984 (1980).  We believe these cases are instructive. In 
Piersall
, the court held that the statement that the plaintiff was a liar was not actionable defamation because there were no specific facts at the root of the statement capable of being objectively verified as true or false. 
Piersall
, 230 Ill. App. 3d at 510.  Similarly in 
Kakuris
, the court held that an employer's statements that the employee exhibited a "[l]ack of achievement in basic goals" and "did not have the qualifications needed to achieve the objectives of the profession," merely expressed an opinion that plaintiff proved to be unsatisfactory in his role as a district scout executive. 
Kakuris
, 88 Ill. App. 3d at 600. 

III 

Plaintiff next contends that the trial court improperly dismissed his claim against Glen Regal for wages under the Illinois Wage Payment and Collection Act (the Wage Act)(820 ILCS 115/1 
et seq
. (West 1992).  Glen Regal asserts that the Illinois Wage Payment and Collection Act is inapplicable to the instant case and plaintiff has failed to plead factual allegations sufficient to state a claim under the Wage Act.

 In 1973, the Illinois General Assembly enacted the Wage Act to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers.  See S. Miller, 
Minimum Guaranteed Rights Under the Illinois Wage Payment and Collection Act
, 81 Ill. B.J. 194, 195 (1993).  Upon an employee's separation, an employer is required to pay the full amount of the employee's final compensation within the next regularly scheduled pay period.  820 ILCS 115/5 (West 1992).  An employer convicted under the Act for intentionally withholding or delaying the payment of wages or final compensation is guilty of a Class C misdemeanor.  820 ILCS 115/14(a)(West 1992). The Wage Act defines wages or final compensation as "any compensation owed an employee by an employer pursuant to an employment contract or agreement 
between the 2 parties."  820 ILCS 115/2 (West 1992).  Claims for wages or final compensation are thus akin to breach of contract actions.

In the instant case, it appears from the record that the trial court  dismissed plaintiff's cause of action under the Wage Act based on its belief that the Wage Act did not provide for a private right of action.  This is not so.  Section 11(c) of the Wage Act provides that an employee can bring a private cause of action to recover the wages owed to him.  820 ILCS 115/11(c)(West 1992).  

Plaintiff asserts that, as an employee of Glen Regal, he was within the class of persons the Wage Act was designed to protect.  Section 13 of the Wage Act does allow an employee to hold corporate officers and agents personally liable by proving that they knowingly permitted the corporation to violate the Wage Act.  820 ILCS 5/13 (West 1992); see 
Johnson v. Western Amusement Corp.
, 157 Ill. App. 3d 873, 510 N.E.2d 991 (1987); 
Stafford v. Puro
, 63 F.3d 1436 (7th Cir. 1995).  However, section 2(1) states that the Wage Act does not apply to an employee "who has been and will continue to be free from control and direction over the performance of his work."  820 ILCS 115/2(1)(West 1992).  

In the case 
sub judice
, it is not clear whether plaintiff is referring to the time period before or after he was voted out as president. As president of Glen Regal, plaintiff was an employee who also had some control over the business and direction over the performance of his work.  Therefore, we hold that plaintiff does not fall into the class of employees the Wage Act seeks to protect.

IV 

Plaintiff next contends that the trial court erred in dismissing his claim for retaliatory discharge.  Defendants argue that plaintiff's claim is not supported by fact or law.  Retaliatory discharge is an exception to the general rule that "at-will" employment is terminable at any time for any or no cause.  
Palmateer v. International Harvester Co.
, 85 Ill. 2d 124, 128, 421 N.E.2d 876 (1981).  The purpose of retaliatory discharge is to balance the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its policies carried out.  
Palmateer
, 85 Ill. 2d at 129.  

To establish a valid claim for retaliatory discharge, an employee must show that he was: (1) discharged; (2) in retaliation for his activities; and (3) that the discharge violated a clear mandate of public policy.  
Hartlein v. Illinois Power Co.
, 151 Ill. 2d 142, 160, 601 N.E.2d 720 (1992).  The policy identified in the complaint, however, must either "strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed" (Palmateer, 85 Ill. 2d at 130) or involve the protection of each citizen's health and safety.  
Wheeler v. Caterpillar Tractor Co.
, 108 Ill. 2d 502, 511, 485 N.E.2d 372 (1985).   Public policy also favors the exposure of criminal activity, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy.  
Palmateer
, 85 Ill. 2d at 132. For example, in 
Russ v. Pension Consultants Co.
, 182 Ill. App. 3d 769, 538 N.E.2d 693 (1989), the plaintiff filed a retaliatory discharge claim because his employer fired him for refusing to create and backdate pension plans, which would violate federal tax laws.  The court held Illinois has an interest in the enforcement of the federal tax laws because falsification of federal tax records could also mean the falsification of state tax records, since the legislature has adopted the federal taxable income as the starting point for calculating the state corporate income tax.  Therefore, the underpayment of federal income taxes could result in the underpayment of state taxes.  
Russ
, 182 Ill. App. 3d at 777.

Plaintiff argues that his termination violated public policy because he refused to violate a covenant not to compete and assist defendants in their conspiracy to restrain trade and engage in unfair competition.  Plaintiff relies on 
Johnson v. World Color Press, Inc.
, 147 Ill. App. 3d 746, 498 N.E.2d 575 (1986), to support his argument.  In 
Johnson
, the plaintiff alleged he was discharged in retaliation for his opposition to certain accounting practices of his employer that he claimed constituted violations of federal security laws.  The court found that improper entries in the company's financial statements could mislead the public, who are potential investors of the employer's parent company.  Therefore, the court held that public policy favors full disclosure, truthfulness and accuracy in the financial reports made by businesses to the government and to the public, and that employees who voice objections should be protected from being discharged as a result of such objections.  
Johnson
, 147 Ill. App. 3d at 754.

We note that not all criminal activity violates a public policy sufficient to warrant protection from a retaliatory discharge claim.  
Leweling v. Schnadig Corp.
, 276 Ill. App. 3d 890, 897, 657 N.E.2d 1107 (1995). The policy must give rise to a social duty or responsibility or promote the health and welfare of the citizenry. Leweling, 276 Ill. App. 3d at 897. The public policies in 
Russ
 and 
Johnson
 protect citizens from fraudulent and misleading information that could ultimately affect their welfare.  We do not believe the public policies advanced in covenants not to compete and in preventing unfair competition, as alleged by plaintiff, affect the overall welfare of citizens.  They only affect the contractual relationship between an employer and employee.  Therefore, we hold that plaintiff's allegations do not advance a public policy sufficient to warrant protection from a retaliatory discharge claim.  

V

Plaintiff next contends that the trial court improperly dismissed his claim for breach of fiduciary duty.  Defendants argue that, as officers of the corporation, they had a fiduciary duty to the corporation to act in the best interests of the corporation.  Defendants further argue that, as officers, they do not owe a fiduciary duty to other directors, officers and shareholders.   

It is undisputed that the individuals who control corporations owe a fiduciary duty to their corporations and their shareholders.  
Graham v. Mimms
, 111 Ill. App. 3d 751, 761, 444 N.E.2d 547 (1982).  Corporate entities, however, do not owe fiduciary duties to minor shareholders.  
Wencordic Enterprises, Inc. v. Berenson
, 158 Ill. App. 3d 913, 918, 511 N.E.2d 907 (1987). 

Plaintiff asserts that, as a close corporation, defendants and plaintiffs owed a fiduciary duty to each other. Plaintiff relies on 
Hagshenas v. Gaylord
, 199 Ill. App. 3d 60, 557 N.E.2d 316 (1990), to support his assertion.  In 
Hagshenas
, the court held that, although the corporation, Imperial, was not organized or registered as a close corporation under the Close Corporation Act (Ill. Rev. Stat. 1981, ch. 32, par. 1201 
et seq
.) for all practical purposes it acted as a close corporation.   The court noted that plaintiff and defendant each owned 50% of the stock, they were the directors and officers of the company, and they oversaw the day-to-day operations.  The court concluded that the counterdefendant, as a 50% shareholder in the closely held corporation, owed a fiduciary duty similar to a partner to Imperial and its shareholders.  
Hagshenas
, 199 Ill. App. 3d at 71.

We believe that 
Hagshenas
 is instructive. Although Glen Regal was not organized or registered as a close corporation under the Close Corporation Act, for all practical purposes it acted as a close corporation.  In 
Galler v. Galler
, 32 Ill. 2d 16, 203 N.E.2d 577 (1964), the supreme court defined a close corporation as "one in which the stock is held in a few hands, or in a few families, and wherein it is not at all, or only rarely, dealt in by buying or selling." 
Galler
, 32 Ill. 2d at 27. We believe that Glen Regal meets this test.  The shareholders in the instant case are directors and officers and participate in the day-to-day operations.  Although Glen Regal was labeled as a corporation, it clearly was an enterprise closely resembling a partnership.  A partner owes a duty to exercise the highest degree of honesty and good faith in the dealings and in handling of business assets, thereby prohibiting enhancement of personal interests at the expense of the interests of the enterprise.  
Jaffe Commercial Finance Co. v. Harris
, 119 Ill. App. 3d 136, 143, 456 N.E.2d 224 (1983).  

However, our holding that defendants owed the plaintiff a fiduciary duty in the instant case is not dispositive of this issue.  We must also determine whether the defendants breached the duty they owed to plaintiff. Plaintiff argues that defendants breached their duty to him by defaming him.  However, we have already held that the statements alleged in the complaint did not state a cause of action for defamation.  Plaintiff also argues that defendants breached their duty to him by terminating his employment contract.  However, plaintiff's employment was terminable at will.  Therefore, his termination could not have risen from a breach of any duty owed to him regarding his employment.

VI

Plaintiff next contends that he stated a cause of action for breach of contract.  Plaintiff argues that defendants breached their contract with him by not giving him 65% of the stock as promised and by subsequently attempting to reduce his stock ownership to 25%.  Defendants argue that plaintiff's claim is barred by section 8-319 of the UCC.  

Generally, an oral contract to purchase securities is unenforceable under section 8-319. See 810 ILCS 5/8-319 (West 1992).  Plaintiff argues, nevertheless, that his claim is viable by virtue of the doctrine of part performance.  It is true that section 8-319 does not bar the enforcement of an oral contract where there has been part performance by one party in reliance on the promise of the other.  
Johnson v. George J. Ball, Inc.
, 248 Ill. App. 3d 859, 866, 617 N.E.2d 1355 (1993).  Part performance is, however, an equitable doctrine.  
Phillips v. Britton
, 162 Ill. App. 3d 774, 781, 516 N.E.2d 692 (1987).  Thus, part performance will avoid application of section 8-319 only where a party is seeking the equitable remedy of specific enforcement.  
Phillips
, 162 Ill. App. 3d at 782; 
Cohn v. Checker Motors Corp.
, 233 Ill. App. 3d 839, 844-45, 599 N.E.2d 11 (1992).  Therefore, the doctrine of part performance may not be invoked to sustain an ordinary action at law for damages for breach of contract.  Accordingly, the doctrine of part performance does not prevent the application of section 8-319 in the instant case.

VII

Next, plaintiff argues that he sufficiently pled a cause of action for fraud based on misrepresentations made by defendants.  Defendants argue that plaintiff fails to plead facts sufficiently specific to state a cause of action against any of the defendants. 

To state a cause of action for fraudulent misrepresentation, a plaintiff must assert:  (1) that the defendant made a statement; (2) of a material nature; (3) which was untrue; (4) known by the person making it to be untrue, or made in culpable ignorance of its truth or falsity; (5) relied on by the victim to his detriment; (6) made for the purpose of inducing reliance; and (7) the victim's reliance led to his injury.  
General Electric Credit Auto Lease, Inc v. Jankuski
, 177 Ill. App. 3d 380, 383, 532 N.E.2d 361 (1988).  

"Promissory fraud" is a form of fraud based upon a false representation of intent concerning future conduct, 
e.g.
, a promise to perform a contract when there is actually no intent to perform the contract. 
General Electric Credit Auto Lease
, 177 Ill. App. 3d at 384.  As a general rule, promissory fraud, based on future acts, is not actionable in Illinois unless the promise is a part of a "scheme" to defraud.  
General Electric Credit Auto Lease
, 177 Ill. App. 3d at 384.  

Plaintiff argues that the fraudulent statements alleged in the complaint that he "would be President of Glen Regal and own 65% of the stock" and he "would be paid a salary of $5,000 per month" were made pursuant to an alleged scheme to drain him of his existing goodwill, business, staff and equipment, then replace him with Randall and squeeze him out of the company.  Plaintiff relies on 
Stamatakis Industries, Inc. v. King
, 165 Ill. App. 3d 879, 520 N.E.2d 770 (1987), to support his argument. In 
Stamatakis
, the court held that the defendant's promises to make good on a contract for the purchase of equipment when he knew the company could not pay, as well as his promise to enter into an employment contract for five years with a covenant not to compete when he intended not to perform, properly alleged a scheme against plaintiff, and that the actual existence of a scheme was a question of fact for the trier of fact.  
Stamatakis
, 165 Ill. App. 3d at 881-82.   

Plaintiff also relies on 
Carter v. Mueller
, 120 Ill. App. 3d 314, 457 N.E.2d 1335 (1983).  In 
Carter
, the court held that a landlord's assurance to a tenant that everything would be taken care of prior to the tenant taking possession, in addition to a later statement that everything was taken care of, constituted a scheme.  
Carter
, 120 Ill. App. 3d at 319-20.  

We believe that 
Stamatakis
 and 
Carter
 are distinguishable from the case 
sub judice
.  We do not believe that plaintiff has sufficiently pled facts to show the existence of a scheme.  Specifically, plaintiff fails to allege which defendant made the statements.  Also, there are no facts alleged that, at the time of the alleged representations, there was an intent not to perform them.  According to the complaint, plaintiff did, in fact, become president of the corporation until defendants voted him out in March 1994.  Plaintiff also alleges that his stock was "reduced" to 25% at the March 1994 board meeting.  Therefore, it is not clear from the complaint whether plaintiff actually received 65% of the stock from the inception of the corporation.  Also, the fact that he only received $2,000 or $3,000 per month, instead of $5,000, is not evidence of a scheme.  Furthermore, we do not believe that plaintiff states a cause of action against Modder and Randall because the claim is based upon events that transpired prior to their association with Glen Regal Landscaping.

VIII 

Plaintiff next contends that the trial court improperly dismissed his claim that defendants violated the Consumer Fraud and Deceptive Business Practices Act.  815 ILCS 505/1 
et seq.
 (West 1992).  Defendants argue, and the trial court agreed, that the Consumer Fraud Act does not apply because plaintiff has failed to allege facts that identify him as a "consumer" within the meaning of the Consumer Fraud Act.

Section 2 of the Consumer Fraud Act provides, in pertinent part:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with 

intent that others rely upon the concealment, suppression or omission of such material fact, *** are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2 (West 1992).

The Consumer Act further states:

"(e) The term 'consumer' means any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household."  815 ILCS 505/1(e)(West 1992).

Plaintiff is correct that the protections of the Act are not limited only to consumers.  
Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors
, Inc.
, 275 Ill. App. 3d 452, 457, 654 N.E.2d 1109 (1995); 
Downers Grove Volkswagen, Inc. v. Wigglesworth Imports
, 
Inc.
, 190 Ill. App. 3d 524, 534, 546 N.E.2d 33 (1989). The Act is to be liberally construed.  
Downers Grove Volkswagen
, 190 Ill. App. 3d at 534.  However, despite the broad language of section 2, courts have recognized that it was not intended to cover all commercial transactions regardless of the relationship between the parties involved.  
Lake County Grading Co.
, 275 Ill. App. 3d at 457.  To determine whether the Act applies, we must examine the facts in light of the development of the relevant case law.

A seminal case on this issue is 
Century Universal Enterprises, Inc. v. Triana Development Corp.
, 158 Ill. App. 3d 182, 510 N.E.2d 1260 (1987).  In 
Century Universal
, the court held that a dispute between a financier and developer over a contract was not covered under the Consumer Fraud Act because the businessmen were not consumers of each other's goods or services.  However, in 
Downers Grove
, the court recognized that the Act protects businessmen as well as consumers and that 
Century Universal
's narrow reading of the Act may not be appropriate in all cases. In 
Downers Grove
, the plaintiff and defendant were automobile dealers whose businesses included the servicing of Saab vehicles.  Plaintiff sued defendant for trade disparagement due to defendant distributing 15,000 brochures containing allegedly false statements regarding the plaintiff's business practices.  The court recognized that there are some cases where the Act applies despite the fact that the parties are not consumers of each other's goods or services.  The court held that, where a dispute involves two businesses that are not consumers, the proper test is "whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns."  
Downers Grove
, 190 Ill. App. 3d at 534.  Based on the test, the court held that the plaintiff's consumer protection concerns were implicated.  
Downers Grove
, 190 Ill. App. 3d at 534.

Plaintiff alleged in his second amended complaint that he was a consumer in the sale of the stock he purchased in the corporation.  We believe that his allegation that he did not receive 65% of the stock or that defendants reduced his stock addresses breach of contract concerns.  However, plaintiff does not plead how the particular breach implicates consumer protection concerns. See 
Lake County Grading
, 275 Ill. App. 3d at 459 (where the court held that in cases where the plaintiff attempts to allege a violation of the Act in a case that appears on its face to involve only a breach of contract, the relevant inquiry is whether the alleged conduct implicates consumer protection concerns). 

Plaintiff also argues that the statements that defendants made that plaintiff is lazy, incompetent, dishonest, unable to run his business, and unable to perform landscaping services constituted trade defamation and disparagement.  Section 2(8) states:

"A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he:

* * * 

(8) disparages the goods, services or business of another by false or misleading representation of fact[.]"  815 ILCS 510/2(8)(West 1992). 

Because we have already held that defendants' alleged statements did not constitute defamation, we do not believe that plaintiff has pled facts sufficient to state a cause of action for trade disparagement. 

Nonpublishable material under Supreme Court Rule 23 omitted.

For the reasons stated herein, the judgment of the circuit court of Cook County dismissing plaintiff's second amended complaint is affirmed.

Affirmed.