No. 2--06--1055    Filed: 7-30-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOHN GREEN, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06--L--208 |
| | ) | |
| STEVEN ROGERS, | ) | Honorable |
| | ) | Robert K. Kilander |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

On March 3, 2006, the plaintiff, John Green, filed a complaint against the defendant, Steven Rogers, then president of the Clarendon Hills Little League (CHLL), alleging causes of action for defamation per se and civil conspiracy. The plaintiff subsequently issued subpoenas to each of the individual members of the CHLL board. On May 10, 2006, the trial court quashed the subpoenas and stayed discovery pending resolution of a motion to dismiss the plaintiff's complaint. On July 13, 2006, the trial court granted the defendant's motion to dismiss the plaintiff's first amended complaint pursuant to section 2--615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2--615 (West 2006)). The plaintiff filed a motion to reconsider the May 10 and July 13, 2006, orders. On September 21, 2006, the trial court denied the plaintiff's motion to reconsider. The plaintiff appealed from these orders. This court reversed the trial court's determination and remanded the case for additional proceedings. Green v. Rogers, No. 2--06--1055 (2007) (unpublished order under Supreme

Court Rule 23). The defendant filed a petition for leave to appeal. Our supreme court denied the defendant's petition but, under its supervisory authority, directed this court to vacate our judgment and reconsider it in light of Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc., 227 Ill. 2d 381 (2008). We affirm in part, reverse in part, and remand for additional proceedings consistent with this opinion.

BACKGROUND

The plaintiff lives with his wife and three children in the Village of Clarendon Hills (the Village). He is a practicing dentist and attorney, and from 2000 to 2004 he served in some capacity in CHLL. On March 3, 2006, the plaintiff filed a complaint asserting claims of defamation per se and civil conspiracy against the defendant. In his complaint, the plaintiff alleged the following.

The plaintiff had been a volunteer for CHLL since 2000 and had managed, coached, and served as the minor league director. In December 2004, the plaintiff submitted his name to coach a CHLL team. In January 2005, the plaintiff announced that he was a candidate for Village trustee with the election to be held on April 5, 2005. On March 4, 2005, the defendant sent the plaintiff an e-mail stating that the CHLL board had decided not to assign the plaintiff as a coach for the year. The e-mail stated that the board's "decision was based on a long pattern of behavior which [was] not consistent with what [the CHLL board felt was] acceptable for our coaches." Prior to March 4, 2005, the plaintiff had never been informed by CHLL of any conduct unacceptable for coaching and had never been disciplined or advised as to any complaints about his coaching.

On March 7, 2005, the plaintiff sent the defendant an e-mail indicating that he sought an immediate appeal of the board's decision. The defendant responded by letter that denied the plaintiff's request for an appeal hearing. On March 11, 2005, the defendant sent an e-mail to the plaintiff that

clarified the board's ruling. The defendant explained that the board's decision barred the plaintiff from being a coach or manager only for the 2005 season. The plaintiff was still eligible to be a parent volunteer. On the same date, the plaintiff sent a reply indicating that he "respectfully disagreed" with the board's decision to "not allow [him] to coach [his] only son." The plaintiff implored the defendant to "do the right thing" and allow the plaintiff to coach his son. The defendant sent a reply indicating that the board declined to reverse its decision.

In March 2005, during the plaintiff's political campaign for trustee of the Village, the plaintiff was advised by two of his running mates that trustee Terry Pocius and Village resident Mary Church Brown informed them that the plaintiff was denied a coaching position with CHLL because of his temper and inappropriate behavior with children. Pocius and Brown also indicated that the defendant was the source of those comments.

The plaintiff alleged that on or about March 4, 2005, the defendant made and published statements about the plaintiff that he knew were false and were made to humiliate, embarrass, and harm the plaintiff as a candidate and damage his reputation in the community. Specifically, the defendant allegedly stated that the plaintiff: "(a) *** exhibited a long pattern of misconduct with children which was not acceptable for CHLL coaches; (b) *** abused players, coaches and umpires in CHLL; and (3)*** was unfit to be assigned as a CHLL coach to insinuate to the community that the plaintiff was guilty of inappropriate behavior with children and others associated with CHLL." The plaintiff alleged that the defendant knowingly and intentionally made and published these defamatory statements about the plaintiff to the CHLL board, members of CHLL, and residents of the Village.

The plaintiff further alleged that the defendant conspired with others to knowingly allow such defamatory statements to be disseminated beyond the CHLL board. The defendant denied the plaintiff an opportunity to respond to the false charges. The defendant also failed to set forth any specific behavior of the plaintiff that justified barring him as a coach. The plaintiff alleged that in January 2006 he again submitted his name to coach a CHLL team and his application was again denied. The plaintiff alleged that the defendant's defamatory statements had damaged his reputation in the community and his reputation as an attorney and dentist. Additionally, the plaintiff has had to endure public ridicule and personal embarrassment.

In count I of the plaintiff's complaint, alleging defamation per se, the plaintiff realleged the foregoing facts and alleged that the defendant intentionally made defamatory and false statements about the plaintiff to one or more third parties, including the CHLL board, members of CHLL, and residents of the Village. The defendant's statements allegedly impugned the plaintiff's character and integrity as a dentist and an attorney and disparaged his reputation as a competent coach for youth sports. In count II, for civil conspiracy, the plaintiff realleged the foregoing and further alleged that the defendant engaged in a scheme with other members of the CHLL board and with the plaintiff's political opponents to prevent the plaintiff from being assigned as a CHLL coach, to harm the plaintiff's reputation, and to embarrass him politically and in the community. The plaintiff requested compensatory and special damages in excess of $50,000 and punitive damages in excess of $100,000.

On April 14, 2006, the plaintiff issued subpoenas to each of the individual members of the CHLL board. The subpoenas each contained 28 demands for production of documents. On April 26 and 27, respectively, the defendant filed a motion for a protective order to stay discovery and a motion to quash the subpoenas, on behalf of all of the parties to whom the subpoenas were served.

In his motion to stay discovery, the defendant indicated that he would be filing a motion to dismiss the plaintiff's complaint. The defendant argued that the trial court had the power to stay discovery in order to prevent unnecessary annoyance and expense. The defendant requested that the trial court stay discovery until the defendant's motion to dismiss was resolved. On May 2, 2006, the defendant filed a motion to dismiss the plaintiff's complaint pursuant to section 2--619.1 of the Code (735 ILCS 5/2--619.1 (West 2006)).

On May 10, 2006, a hearing was held on the defendant's motions to quash the subpoenas and stay discovery. The plaintiff's counsel indicated that the subpoenas would provide information that the plaintiff would like to use in an amended complaint. Defense counsel argued that there was no point in allowing such extensive discovery until there was a ruling on the defendant's motion to dismiss. The trial court noted that the documents being subpoenaed from the members of the CHLL board would be available through the defendant since he was the president of the board. The trial court did not find it appropriate to subpoena information from third parties until it was clear whether the information would be available from the defendant. The trial court granted the motion to quash and the motion to stay discovery.

On June 5, 2006, the plaintiff filed a motion for leave to amend his complaint and a motion to vacate the protective order staying discovery. In addition to the original allegations, the amended complaint alleged that the CHLL board held a meeting on March 4, 2005, to select coaches and managers for the 2005 season and that the defendant made the allegedly defamatory statements about the plaintiff to the board members and other Village residents at that meeting. The plaintiff named the board members as David Killpack, Hartwell Morse, Eric Nolan, Steve Garnett, and Doug Denlinger. The plaintiff specified that two of the Village residents were Terry Pocius and Mary

Church Brown. The plaintiff also alleged that he had submitted his name to be a coach in January 2006. The plaintiff incorporated the original allegations and further alleged that the defendant had made the same defamatory statements to the board members and Village residents at a February 27, 2006, CHLL board meeting held to select coaches for the 2006 season. The plaintiff added an additional count for defamation per se based on the defendant's February 27, 2006, statements. In sum, counts I and II of the amended complaint were for defamation per se and count III was based on civil conspiracy.

On June 12, 2006, oral argument was held on the plaintiff's motion to amend his complaint and motion to vacate the protective order staying discovery. The plaintiff indicated that his main concern as to his inability to obtain discovery was the one-year statute of limitations on defamation claims. The plaintiff acknowledged, however, that the statute was tolled by the filing of the complaint. The plaintiff asserted that there were other publications made by other third parties that would be revealed in the subpoenaed records. The trial court indicated that it was not concerned about other potential defendants and invited the plaintiff to file additional suits against any third parties. The trial court stated that it wanted to have an initial hearing on the defendant's motion to dismiss before allowing further discovery. Therefore, the trial court granted the plaintiff's motion to amend and continued the plaintiff's motion to vacate the protective order until after a hearing on the motion to dismiss.

On June 16, 2006, the defendant filed a motion to dismiss the first amended complaint pursuant to section 2--615 of the Code (735 ILCS 5/2--615 (West 2006)). In his motion, the defendant argued that the allegations did not state a claim for defamation or civil conspiracy. Specifically, the defendant argued that the alleged statements were not defamatory per se. The

defendant argued that there was no nexus between the alleged statements regarding the plaintiff's suitability to be a little league coach and the plaintiff's ability as an attorney or dentist. Additionally, the defendant argued that the alleged statements did not impute the commission of a criminal offense.

The defendant also argued that the statements were not actionable because they were susceptible to an innocent interpretation. The defendant argued that "abuse" could mean verbal abuse well below the level of criminal conduct. Additionally, the defendant argued that "misconduct" could mean something as innocuous as taking the children to Dairy Queen without their parents' permission. Finally, the defendant argued that the alleged statements were not actionable because they were expressions of opinion and not fact. The defendant argued that the alleged statements were general and not supported by any specific facts. For example, there was no explanation of the plaintiff's temper, there was no description of any form of abuse, and there was no explanation of why the plaintiff was unfit to coach. The defendant argued that the alleged statements were not actionable because they were not tied to any particular verifiable factual circumstance.

On July 13, 2006, a hearing was held on the defendant's motion. Following argument, the trial court noted what it thought were a number of peculiarities present in the plaintiff's complaint. Specifically, the trial court noted that the complaint alleged that the defendant made the identical defamatory statements on March 4, 2005, and February 27, 2006. The trial court also noted that, in defamation suits, the alleged defamatory statements are usually very specific and surrounded by quotation marks. The trial court noted that the defamatory statements alleged in the plaintiff's complaint seemed to be summations of what may have been said. The trial court also noted that the complaint alleged only that the statements may have been made to some people, but was not specific as to who was there when the statements were made.

Thereafter, the trial court determined that the plaintiff's complaint failed to state a cause of action for defamation or civil conspiracy. The trial court stated that the alleged defamatory statements were insufficient as a matter of law to state a claim for defamation per se. The trial court also found that the statements were simply opinions capable of innocent construction. The trial court thus dismissed counts I and II for defamation per se. The trial court then dismissed count III for civil conspiracy because it was dependent on the defamation claims in counts I and II. The trial court clarified that it was a dismissal without prejudice and cautioned the plaintiff to review Supreme Court Rule 137 (155 Ill. 2d R. 137) prior to filing any further pleadings. The trial court denied the plaintiff's motion to vacate the protective order staying discovery. Finally, the trial court granted the plaintiff 30 days to file an amended pleading.

On August 10, 2006, the plaintiff stood on his first amended complaint and filed a motion to reconsider the order dismissing that complaint and the order denying him the right to subpoena relevant documents from third parties in support of his claims. On September 21, 2006, following a hearing, the trial court denied the motion to reconsider. Thereafter, the plaintiff filed a timely notice of appeal.

ANALYSIS

On appeal, the defendant argues that the trial court erred in granting the defendant's motion to dismiss and in denying him the right to conduct additional discovery.

"The question presented by a section 2--615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. [Citation.] Illinois is a fact-pleading jurisdiction that requires a plaintiff to present a legally and factually sufficient

complaint. [Citation.] The plaintiff is not required to prove his or her case, but must allege sufficient facts to state all the elements of the asserted cause of action. [Citation.]

When ruling on a section 2--615 motion to dismiss, the trial court should admit all well-pleaded facts as true and disregard legal and factual conclusions that are unsupported by allegations of fact. [Citation.] If, after disregarding any legal and factual conclusions, the complaint does not allege sufficient facts to state a cause of action, the trial court must grant the motion to dismiss. [Citation.] The standard of review on a section 2--615 dismissal is de novo. [Citation.]" Neurosurgery & Spine Surgery, S.C. v. Goldman, 339 Ill. App. 3d 177, 182 (2003).

### A. Relevant Case Law on Defamation Per Se

A statement is defamatory if it "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with [him]." Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 87 (1996). "To state a defamation claim, a plaintiff must present facts that a defendant made a false statement about a plaintiff, [that] the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." Seith v. Chicago Sun-Times, Inc., 371 Ill. App. 3d 124, 134 (2007). If a plaintiff alleges that a statement is defamatory per se, he need not plead or prove actual damages to his reputation; statements that are defamatory per se "are thought to be so obviously and materially harmful to the plaintiff that injury to [his] reputation may be presumed." Bryson, 174 Ill. 2d at 87. Illinois recognizes five categories of statements that are defamatory per se: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or

employment; (4) those that prejudice a party or impute lack of ability in the party's trade, profession, or business; and (5) those imputing adultery or fornication. Bryson, 174 Ill. 2d at 88-89. The plaintiff alleges that the defendant's statements fall within the first, third, and fourth categories of defamation per se.

Even if a statement falls into one or more of these categories, a statement will not be deemed defamatory per se if it is reasonably capable of an "innocent construction." Bryson, 174 Ill. 2d at 90. The "innocent construction rule" "requires a court to consider the statement in context and to give the words of the statement, and any implications arising from them, their natural and obvious meaning." Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill. 2d 558, 580 (2006). A court must interpret the words of the statement as they appear to have been used and according to the idea they were intended to convey to the reasonable reader. Bryson, 174 Ill. 2d at 93. When the defendant clearly intended and unmistakably conveyed a defamatory meaning, a court should not strain to see an inoffensive gloss on the statement. Bryson, 174 Ill. 2d at 93. The preliminary determination of whether the innocent construction rule applies is a question of law for the court, and whether the statement was understood to be defamatory or to refer to the plaintiff is a question for the jury if the innocent construction issue is resolved in the plaintiff's favor. Tuite v. Corbitt, 224 Ill. 2d 490, 503 (2006). The innocent construction rule has been deemed a proper ground for dismissal of a complaint pursuant to section 2--615. Tuite v. Corbitt, 358 Ill. App. 3d 889, 900 (2005).

Additionally, if a statement is defamatory per se, but not subject to an innocent construction, it still may enjoy constitutional protection under the first amendment. Solaia Technology, 221 Ill. 2d at 581. The first amendment to the United States Constitution states, in part, that "Congress shall make no law *** abridging the freedom of speech ***." U.S. Const., amend. I. The United States

Supreme Court has long held that its provisions are also binding on the states through the due process clause of the fourteenth amendment. Imperial Apparel, 227 Ill. 2d at 393, citing Murdock v. Pennsylvania, 319 U.S. 105, 108, 87 L. Ed. 1292, 1295-96, 63 S. Ct. 870, 872 (1943). The provisions of the first amendment have been interpreted as limiting the reach of state defamation law. Imperial Apparel, 227 Ill. 2d at 394.

"Whether and to what extent the Constitution constrains state defamation law depends on the circumstances of the case at issue. Two considerations must be taken into account. The first is whether the plaintiff is a public figure or official or is, instead, *** a private figure. The second is whether the speech at issue is of public concern. [Citation.]" Imperial Apparel, 227 Ill. 2d at 394.

The question of whether the plaintiff is a public or private figure affects the standard of liability. If the plaintiff is a public figure, the first amendment precludes him from obtaining redress in a defamation action unless he can prove that the allegedly defamatory statements were made with actual malice. Imperial Apparel, 227 Ill. 2d at 394. If the plaintiff is a private figure, the first amendment does not impose any restriction on the liability standards that states may adopt. Imperial Apparel, 227 Ill. 2d at 394. In Illinois, ordinary negligence is the liability standard. Troman v. Wood, 62 Ill. 2d 184, 198 (1975).

In contrast to a plaintiff's status, the content of the challenged speech bears on the standard that must be satisfied in order to recover punitive damages. Imperial Apparel, 227 Ill. 2d at 395. Specifically, "[w]here the cause of action is based on defamatory statements concerning a matter of public concern, punitive damages may not be imposed absent a showing of actual malice." Imperial Apparel, 227 Ill. 2d at 395.

In addition to governing standards regarding fault, falsity, and punitive damages, the first amendment imposes limits on the type of speech that may be the subject of state defamation actions. Imperial Apparel, 227 Ill. 2d at 397. Specifically, in Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 111 L. Ed. 2d 1, 19, 110 S. Ct. 2695, 2706 (1990), the Supreme Court held that a statement will receive first amendment protection only if it "cannot be reasonably interpreted as stating actual facts" about the plaintiff. The Milkovich Court balanced the first amendment's guarantee of free, uninhibited discussion with society's interest in preventing and redressing attacks on reputation. Milkovich, 497 U.S. at 22, 111 L. Ed. 2d at 20, 110 S. Ct. at 2707-08. The Court rejected what it called "an artificial dichotomy between opinion and fact" and noted that expressions of opinion may often imply assertions of objective fact and, in such cases, would be considered actionable. See Milkovich, 497 U.S. at 19, 111 L. Ed. 2d at 18, 110 S. Ct. at 2706; see also Howell v. Blecharczyck, 119 Ill. App. 3d 987, 993 (1983) (a statement of opinion that implies the existence of an undisclosed defamatory fact is actionable).

To determine whether a statement reasonably presents or implies the existence of facts about the plaintiff, we review three considerations: "whether the statement has a precise and readily understood meaning, whether the statement is verifiable, and whether the statement's literary or social context signals that it has factual content." Solaia Technology, 221 Ill. 2d at 581. In doing so, we bear in mind that the first amendment protects overly loose, figurative, rhetorical, or hyperbolic language, which negates the impression that the statement actually presents facts. Hopewell v. Vitullo, 299 Ill. App. 3d 513, 518 (1998). Whether a statement qualifies as constitutionally protected speech under the first amendment is a matter of law for the court to decide. Hopewell, 299 Ill. App.

3d at 518. To determine whether a statement is fact or opinion, a court must evaluate the totality of the circumstances. <u>Piersall v. SportsVision of Chicago</u>, 230 Ill. App. 3d 503, 510 (1992).

"The principle that an allegedly defamatory statement is protected by the first amendment unless the plaintiff shows that the statement is factual has been found to apply to three types of actions: those brought by public officials, those brought by public figures, and those brought by private individuals against media defendants." <u>Imperial Apparel</u>, 227 Ill. 2d at 398-99. "Whether the privilege afforded by the first amendment to statements that are not factual also extends to statements made by one private party about another on a matter of purely private concern is unsettled." <u>Imperial Apparel</u>, 227 Ill. 2d at 399.

B. Defamation <u>Per Se</u>: Application of Law to the Facts of this Case

1. Defamation <u>Per Se</u> and the Innocent Construction Rule

In the present case, the allegations in the plaintiff's complaint state a cause of action for defamation <u>per se</u>. The plaintiff alleged that the defendant made three defamatory statements: (1) that the plaintiff exhibited a long pattern of misconduct with children, (2) that the plaintiff abused players, coaches, and umpires in CHLL; and (3) that the plaintiff was unfit to be assigned as a CHLL coach. The complaint indicates that, in addition to having served as a CHLL coach for the 2000 through 2004 seasons, the plaintiff is a practicing attorney and dentist. The first two alleged statements are, at a minimum, defamatory under the fourth category of defamation <u>per se</u> because the statements are prejudicial to the plaintiff in his dental and legal professions.

"Statements that have been deemed defamatory <u>per se</u> by Illinois courts under the third and/or fourth categories have always been related to job performance; to succeed, the plaintiff must have been accused of lacking <u>ability in his trade</u> or doing something bad <u>in the course of carrying out his</u>

job." (Emphasis in original.) Cody v. Harris, 409 F.3d 853, 857 (7th Cir. 2005), citing Clarage v. Kuzma, 342 Ill. App. 3d 573 (2003), and Parker v. House O'Lite Corp., 324 Ill. App. 3d 1014 (2001). For example, in Parker, the plaintiff, whose job was drafting lighting specifications for a new hospital, was accused of rigging the specifications so that only his brother-in-law would be able to qualify for the job. Parker, 324 Ill. App. 3d at 1019. This alleged " 'want of integrity' " was in performing the plaintiff's duties of employment, and the court stated that it constituted defamation per se. Parker, 324 Ill. App. 3d at 1025, quoting Van Horne v. Muller, 185 Ill. 2d 299, 307 (1998).

Conversely, attacks related to personal integrity and character have not been deemed defamatory per se. Cody, 409 F.3d at 858, citing Heying v. Simonaitis, 126 Ill. App. 3d 157 (1984). "In Heying, the court held that statements made by doctors regarding personality conflicts between the plaintiff nurse and her fellow employees did not impugn her ability as a nurse." Cody, 409 F.3d at 858, citing Heying, 126 Ill. App. 3d at 164. Nonetheless, "[i]n some cases, personal integrity is so intertwined with job skills, that an attack upon it could constitute defamation per se." Cody, 409 F.3d at 858, citing Kumaran v. Brotman, 247 Ill. App. 3d 216 (1993). In Kumaran, the court found that the plaintiff stated a cause of action for defamation per se where a newspaper article alleged that the plaintiff had brought several nonmeritorious lawsuits to "scam" settlement money from the defendants. Kumaran, 247 Ill. App. 3d at 225. The court concluded that the accusations contained in the article prejudiced the plaintiff in his profession as a substitute teacher "because a teacher would be expected to set a good example and function as a role model for his young, impressionable students." Kumaran, 247 Ill. App. 3d at 227. The court essentially concluded that personal integrity was a job requirement for being a teacher.

The facts in the present case present a situation similar to that in <u>Kumaran</u>. The first two alleged defamatory statements accuse the plaintiff of engaging in misconduct that could impute a lack of ability and prejudice the plaintiff in his dental and legal professions. Similar to the holding in <u>Kumaran</u> that personal integrity is a job requirement for teachers, both the dental and legal professions require persons admitted to practice to be of good moral character. See 225 ILCS 25/9(b) (West 2006); 188 Ill. 2d R. 701(a). Additionally, the Illinois Dental Practice Act prohibits engaging in "dishonorable, unethical, or unprofessional conduct of a character likely to *** harm the public." 225 ILCS 25/23(11) (West 2006). Accordingly, the allegations that the plaintiff had a long pattern of misconduct with children and abused players, coaches, and umpires in CHLL impute a lack of ability and are prejudicial to the plaintiff's dental and legal professions since such professions require a high level of moral character. Misconduct and abuse, especially as to children, is undoubtedly the type of behavior that would lower the public's perception of the plaintiff's moral character. Moreover, the statements are prejudicial to the plaintiff in his dental profession because it is likely that some of the plaintiff's patients are children. The parents of those children would be reluctant to send them to a dentist who "exhibited a long pattern of misconduct with children" and "abused" children.

Turning to the third alleged statement--that the plaintiff was unfit to be assigned as a CHLL coach--we hold that it is not defamatory <u>per se</u>, because it does not prejudice the plaintiff or impute a lack of ability in his professions. Rather, it is capable of an innocent construction. In <u>Anderson v. Vanden Dorpel</u>, 172 Ill. 2d 399, 415 (1996), our supreme court held that an employer's comments to an employee's prospective employer that she did not "follow up on assignments" and did not get along with her coworkers could reasonably be construed to signify "nothing more than that the

plaintiff did not fit in with [the defendant's] organization and perform well in that particular position." The court determined that, because it was capable of such an innocent construction, it would not support an action for defamation per se. Anderson, 172 Ill. 2d at 416. The defendant's alleged statement that the plaintiff was unfit to coach can reasonably be construed in a similar fashion. It could mean nothing more than that the plaintiff did not fit in with the board members of CHLL. As it can be innocently construed, it does not support an action for defamation per se. Anderson, 172 Ill. 2d at 416.

We must next consider whether the first two alleged defamatory statements, which we determined to be defamatory per se, are capable of an innocent construction. Construing the complaint in the light most favorable to the plaintiff, we hold that the defendant's alleged statements, when they are considered in context and their words and implications are given their natural and obvious meaning, are not reasonably capable of an innocent construction. Although there are varying levels of misconduct and abuse of children, any degree of such behavior can hardly be considered innocent. In this context, we cannot find an innocent construction for the defendant's alleged statements.

In his appellee brief, the defendant relies on Harrison v. Chicago Sun-Times, Inc., 341 Ill. App. 3d 555, 570 (2003), for the proposition that the defendant's alleged statements are susceptible of an innocent construction. In Harrison, the defendant published a news story that stated that the plaintiff had kidnapped her child. Harrison, 341 Ill. App. 3d at 560. The plaintiff argued that the defendant's news story was defamatory per se because it imputed the commission of a criminal offense. Harrison, 341 Ill. App. 3d at 562-63. Even though the word "kidnapped" carried a specific meaning denoting a crime under the Illinois criminal statutes, the court found that it was susceptible

of an innocent construction because there were also noncriminal meanings of the word. See Harrison, 341 Ill. App. 3d at 570-71 (noting that in custody and Hague Convention contexts the reasonable construction of the word "kidnapped" does not refer to the violation of a criminal statute).

Harrison may have been persuasive here if the defendant's alleged statements were defamatory per se on the basis that they imputed the commission of a criminal offense. It is reasonable to argue that there may be noncriminal contexts for misconduct with children and abuse of players in CHLL. However, because the defendant's alleged statements are defamatory per se because they prejudice the plaintiff in his professions, Harrison is not persuasive.

### 2. First Amendment Protection

Finally, as explained in Imperial Apparel, we must address whether the alleged defamatory statements are protected by the first amendment, thus precluding or constraining the plaintiff's defamation claims. Relative to first amendment constraints on state defamation law, we must address the status of the parties, the standard of liability, and the standard for punitive damages. The first consideration is whether the plaintiff is a public official or is merely a private figure. In his complaint, the plaintiff alleged that in January 2005 he announced that he was a candidate for Village trustee and that the election was to be held on April 5, 2005. Candidates for public office have been held to be public officials for defamation purposes. Monitor Patriot Co. v. Roy, 401 U.S. 265, 272, 28 L. Ed. 2d 35, 41, 91 S. Ct. 621, 625 (1971) (stating that the first amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office"). Accordingly, the plaintiff was a public official for defamation purposes from the time he announced his campaign for trustee until the election in April 2005. Count I is based on alleged defamatory statements made on March 4, 2005. Since these statements were during the plaintiff's political campaign, he is a public official as

to count I. However, count II is based on statements that were made on February 27, 2006. This court can take judicial notice of the Du Page County Election Commission website that shows the plaintiff lost his campaign for Village trustee. Nordine v. Illinois Power Co., 32 Ill. 2d 421, 428 (1965) (courts may take judicial notice of public records); see also www.dupageelections.com (April 5, 2005, consolidated election). Accordingly, the plaintiff is a private figure as to count II and the liability standard is ordinary negligence. See Troman, 62 Ill. 2d at 198.

With respect to the liability standard of count I, we must next address whether the alleged defamatory statements relate to the plaintiff's official conduct. In New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726 (1964), the Supreme Court held that the first and fourteenth amendments require "a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'--that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (Emphasis added.) That the actual malice standard applies only to comments relating to "official conduct" has been broadly construed to reach "anything which might touch on an official's fitness for office." Garrison v. Louisiana, 379 U.S. 64, 77, 13 L. Ed. 2d 125, 134, 85 S. Ct. 209, 217 (1964). As many things can touch on someone's "fitness for office," this restriction to the actual malice standard is rarely applied. Dixon v. International Brotherhood of Police Officers, 504 F.3d 73, 88 (1st Cir. 2007). As explained in Monitor Patriot Co., 401 U.S. at 274-75, 28 L. Ed. 2d at 42, 91 S. Ct. at 627-28:

"Indeed, whatever vitality the 'official conduct' concept may retain with regard to occupants of public office, [citation] it is clearly of little applicability in the context of an election campaign. The principal activity of a candidate in our political system *** consists in putting

before the voters every conceivable aspect of his public and private life that he thinks may lead the electorate to gain a good impression of him. \*\*\* Any test adequate to safeguard First Amendment guarantees in this area must go far beyond the customary meaning of the phrase 'official conduct.'

Given the realities of our political life, it is by no means easy to see what statements about a candidate might be altogether without relevance to his fitness for the office he seeks." Based on the foregoing, we conclude that the alleged defamatory statements contained in count I of the plaintiff's first amended complaint, accusing the plaintiff of a long pattern of misconduct with children and abuse of children and others in CHLL, relate to the plaintiff's fitness for office and that the actual malice standard applies.

Under the New York Times standard, a statement has been made with actual malice if it was made "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times, 376 U.S. at 280, 11 L. Ed. 2d at 706, 84 S. Ct. at 726. In the present case, the plaintiff properly alleged actual malice. Specifically, in paragraph 24 of his first amended complaint, the plaintiff stated that the defendant made the alleged defamatory statements "which he knew were false." See Krueger v. Lewis, 342 Ill. App. 3d 467, 473 (2003) (actual malice was sufficiently alleged where the complaint stated that the statements were made by the defendant " 'in full knowledge that they were untrue or in reckless disregard of their truth or falsity' "). Thus, the plaintiff has properly alleged the elements of a defamation claim as required by the first amendment and sufficient to survive a section 2--615 motion to dismiss. In summary, the plaintiff is a public official as to count I and a private figure as to count II. The plaintiff has properly alleged actual malice in count I.

The second consideration is whether the speech at issue is of public concern. If so, punitive damages may not be imposed absent a showing of actual malice. This consideration is relevant because the plaintiff requested punitive damages in counts I and II. Whether a publication addresses a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48, 75 L. Ed. 2d 708, 720, 103 S. Ct. 1684, 1690 (1983). A matter of public concern is any matter of political, social, or other concern in the community, rather than merely a personal grievance. Connick, 461 U.S. at 146, 75 L. Ed. 2d at 719, 103 S. Ct. at 1690. Whether statements address a matter of public concern is a question of law. Landstrom v. Illinois Department of Children & Family Services, 892 F.2d 670, 678-79 (7th Cir. 1990).

In the present case, the defendant allegedly indicated that the plaintiff exhibited a long pattern of misconduct with children and abused players, coaches, and umpires in CHLL. This content is a matter of public concern to the Village community. See Terry v. Davis Community Church, 131 Cal. App. 4th 1534, 1547, 33 Cal. Rptr. 3d 145, 154 (2005) (youth group leader's alleged misconduct was matter of public concern because public has interest in matters affecting its youth); Turner v. Devlin, 174 Ariz. 201, 205, 848 P.2d 286, 290 (1993) (police conduct, especially with respect to treatment of children, was matter of public concern). The form and context of the statements also favor a determination that the alleged defamatory statements are a matter of public concern. The statements were made by the defendant, as president of CHLL, during times that the CHLL board was choosing coaches and managers for the upcoming season. Although the alleged statements were made only to a limited number of people, they are not thereby deprived of first amendment protection. See Cioffi v. Averill Park Central School District Board of Education, 444 F.3d 158, 165 (2d Cir. 2006)

(although a defamatory letter was sent only to one person and the members of the board of education, this fact did not remove it from first amendment protection). Moreover, the statements are not merely a personal grievance. Rather, since the statements were made when the CHLL board was choosing coaches and managers for the upcoming season, the purpose of the statements was to alter public opinion or to bring alleged wrongdoing to light. Such a purpose indicates that the statements are a matter of public concern. See Linhart v. Glatfelter, 771 F.2d 1004, 1010 (7th Cir. 1985) (speech is a matter of public concern if it was made for the purpose of bringing wrongdoing to light or to raise issues of public concern, rather than to further some purely private interest).

Accordingly, because the statements at issue are a matter of public concern, punitive damages may not be imposed absent a showing of actual malice. As stated, the plaintiff properly alleged actual malice in count I, which was required because the plaintiff is a public official as to that count. The plaintiff also properly alleged actual malice as to count II. Specifically, in paragraph 33 of the first amended complaint, the plaintiff alleged that the defendant made the defamatory statements "which he knew were false." See New York Times, 376 U.S. at 280, 11 L. Ed. 2d at 707, 84 S. Ct. at 726 (a statement has been made with actual malice if it was made with knowledge that it was false). Thus, the plaintiff's requests for punitive damages are legally sufficient.

Having determined the constraints the first amendment places on this defamation suit, we must next address whether the alleged statements are constitutionally protected under the first amendment as stating actual fact. As stated above, courts consider several factors in determining whether a statement is factual. First, courts look to whether the statement has a precise and readily understood meaning. Solaia Technology, 221 Ill. 2d at 581. The term "misconduct" is defined as "[a] dereliction of duty; unlawful or improper behavior." Black's Law Dictionary 1013 (7th ed. 1999). The term

"abuse," relative to the treatment of others, is defined as "physical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury." Black's Law Dictionary 10 (8th ed. 2004). Here, the statements that the plaintiff "exhibited a long pattern of misconduct" and "abused players, coaches, and umpires" have a readily understood meaning. Such statements would conjure up images in the listeners' minds of verbal abuse, sexual abuse, or some type of physical abuse. However, the statements are not precise in the sense that they do not give insight into the exact type of abuse or misconduct to which the defendant was referring. Thus, this consideration does not significantly aid our analysis.

We next consider whether the statements are susceptible to being objectively verifiable as true or false. Solaia Technology, 221 Ill. 2d at 581. Viewing the complaint in the light most favorable to the plaintiff, we believe that the defendant's statements are susceptible to being objectively verifiable. The plaintiff's amended complaint alleges that he had been a CHLL coach for the 2000 through 2004 seasons. Information could be gathered from those who interacted with the plaintiff during those seasons to determine if the defendant's allegations are true.

Finally, we consider whether the statements' social context signals that they have factual content. Solaia Technology, 221 Ill. 2d at 581. In Gregory v. McDonnell Douglas Corp., 17 Cal. 3d 596, 552 P.2d 425, 131 Cal. Rptr. 641 (1976), the California Supreme Court noted that the social context in which words were used had to be considered when characterizing those words as fact or opinion:

"Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language

-22-

which generally might be considered as statements of fact may well assume the character of statements of opinion." Gregory, 17 Cal. 3d at 601, 552 P.2d at 428, 131 Cal. Rptr. at 644.

In the present case, the social context signals that the defendant's alleged statements have factual content. A CHLL board meeting where the members are picking coaches for the coming season is not the type of social context where one would expect the use of "epithets, fiery rhetoric or hyperbole." Moreover, the defendant's allegations were not merely that the plaintiff was abusive, rude, or incapable of appropriately managing a little league team. The defendant allegedly stated that the plaintiff "exhibited a long pattern of misconduct" and "abused" CHLL players, coaches, and umpires. A "pattern" of misconduct implies that the plaintiff engaged in a series of acts of misconduct against children. See Black's Law Dictionary 1149 (7th ed. 1999) (defining "pattern" as "[a] mode of behavior or series of acts that are recognizably consistent"). Here, by using the terms "exhibited a long pattern of misconduct" and "abused," the defendant implies that his statements are based on specific factual events. See Moriarty v. Greene, 315 Ill. App. 3d 225, 235 (2000), quoting Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir. 1993) (a statement is actionable if a defendant is claiming to be in possession of objectively verifiable facts, rather than exploring a "subjective view, an interpretation, a theory, conjecture or surmise"); see also Howell, 119 Ill. App. 3d at 993 (a statement that implies the existence of an undisclosed defamatory fact is actionable).

Under the relevant considerations, the defendant's alleged statements can be reasonably interpreted as stating actual facts about the plaintiff and are, therefore, not entitled to first amendment protection. See Milkovich, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706. Thus, the plaintiff's first amended complaint states a cause of action for defamation per se. In light of this determination, we reverse the trial court's order dismissing the plaintiff's amended complaint.

In so ruling, we note that in <u>Imperial Apparel</u> the court stated that this principle, that an alleged defamatory statement is protected by the first amendment unless the plaintiff shows that the statement is factual, had been applied to actions by public officials. This is the situation presented by count I. However, the court further noted that whether the privilege afforded by the first amendment to statements that are not factual extends to statements made by one private party about another on a matter of purely private concern was unsettled. <u>Imperial Apparel</u>, 227 Ill. 2d at 399. Additionally, the supreme court did not comment on whether the privilege has been extended to statements made by a private party to a nonmedia defendant on a matter of public concern, the situation presented by count II of the plaintiff's amended complaint. Nonetheless, as in <u>Imperial Apparel</u>, we need not resolve these issues, because the statements at issue purportedly state actual fact and are not afforded first amendment protection.

We further note that the defendant relies on <u>Doherty v. Kahn</u>, 289 Ill. App. 3d 544, 557 (1997), <u>abrogated on other grounds</u>, <u>Soh v. Target Marketing Systems, Inc.</u>, 353 Ill. App. 3d 126, 131 (2004), and <u>Wynne v. Loyola University of Chicago</u>, 318 Ill. App. 3d 443, 452 (2000), in arguing that the statements at issue are mere expressions of opinion. In <u>Doherty</u>, the plaintiff filed a complaint for defamation <u>per se</u> based on statements the defendant allegedly made to the plaintiff's potential landscaping customers. <u>Doherty</u>, 289 Ill. App. 3d at 554. The defendant allegedly stated that the plaintiff "was 'incompetent,' 'lazy,' 'dishonest,' 'cannot manage a business,' and/or 'lacks the ability to perform landscaping services.' " <u>Doherty</u>, 289 Ill. App. 3d at 554. The reviewing court found that these statements were mere expressions of opinion. <u>Doherty</u>, 289 Ill. App. 3d at 556. In the present case, unlike in <u>Doherty</u>, the defendant did not simply state that the plaintiff was abusive, rude, or unfit, had a bad temper, or was incapable of coaching a CHLL team. As explained above, in context,

the defendant's alleged statements implied that there was a specific factual basis for his statements. Thus, we do not find Doherty persuasive.

In Wynne, the plaintiff's claim for defamation per se was based on a memo that the defendant had written regarding the plaintiff. Wynne, 318 Ill. App. 3d at 447. In the memo, the defendant wrote that the plaintiff made " 'bizarre telephone calls' " to colleagues; the plaintiff " 'appeared to wheedle, persuade, nag, and domineer' " for changes in the university's special education program; " 'nothing ever seemed to satisfy [the plaintiff]' "; the defendant found meetings involving the plaintiff to be " 'uniformly unpleasant' "; and the plaintiff " 'began striking various deals' " with the dean. Wynne, 318 Ill. App. 3d at 452. At the start of the memo, the defendant had cautioned that what was written was " 'simply a summary of [the defendant's] own feelings about [her] experiences with [the plaintiff].' " Wynne, 318 Ill. App. 3d at 452. The reviewing court determined that none of these words were defamatory per se, because they were not capable of verification and the defendant was merely expressing her opinion. Wynne, 318 Ill. App. 3d at 452.

Wynne is also unpersuasive. As explained by the Wynne court: "in one sense all opinions imply facts, the question of whether a statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is nonactionable as a matter of law." Wynne, 318 Ill. App. 3d at 452. Viewed in context, the statements in Wynne were vaguer and more general than the statements at issue in the present case and it was clear that the Wynne defendant was simply stating her opinion. In the present case, the statements that the plaintiff exhibited a long pattern of misconduct and abused players, coaches, and umpires in CHLL, when viewed in context, were more specific and implied that the defendant had a factual basis for his

statements. Additionally, unlike in Wynne, there was no specific indication that the statements were merely the defendant's opinion.

## C. Discovery

The plaintiff's second contention on appeal is that the trial court abused its discretion when it stayed discovery until it ruled on the defendant's motion to dismiss. "A trial court has great latitude in ruling on discovery matters. [Citation.] A trial court's rulings on such matters will not be disturbed absent a manifest abuse of discretion." Adkins Energy, 347 Ill. App. 3d at 380-81. "A court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." Evitts v. DaimlerChrysler Motors Corp., 359 Ill. App. 3d 504, 513 (2005).

We cannot say that the trial court abused its discretion in staying discovery pending a ruling on the defendant's motion to dismiss. See Adkins Energy, 347 Ill. App. 3d at 381 (reviewing court found that the trial court did not abuse its discretion in staying discovery until it resolved whether the plaintiff's complaint stated a cause of action). The trial court explained that the information being subpoenaed from the CHLL board members should have been available from the defendant as president of the CHLL. The trial court did not find it appropriate to subpoena information from third parties until it was clear whether the information would be available from the defendant. At a hearing on the plaintiff's motion to vacate the protective order staying discovery, the plaintiff asserted that his main concern with the inability to obtain discovery was the one-year statute of limitations on defamation claims. The plaintiff acknowledged at the hearing, however, that the statute was tolled by the filing of the complaint. Under these circumstances, the trial court's determination was not unreasonable. Moreover, because we determined that the plaintiff's first amended complaint stated

a cause of action for defamation <u>per se</u>, the protective order staying discovery did not harm the plaintiff. See <u>Adkins Energy</u>, 347 Ill. App. 3d at 381 (indicating that an order staying discovery would be harmful if discovery were necessary to resist a motion to dismiss).

### D. Civil Conspiracy

Finally, we address whether the trial court properly dismissed count III, the plaintiff's claim for civil conspiracy. " 'Civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means.' " <u>Karas v. Strevell</u>, 227 Ill. 2d 440, 466 (2008), quoting <u>Adcock v. Brakegate, Ltd.</u>, 164 Ill. 2d 54, 62 (1994). "Conspiracies are often intentionally 'shrouded in mystery,' which by nature makes it difficult for the plaintiff to allege with complete specificity all of the details of the conspiracy." <u>Time Savers, Inc. v. LaSalle Bank, N.A.</u>, 371 Ill. App. 3d 759, 771 (2007), quoting <u>Adcock</u>, 164 Ill. 2d at 66. However, "the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." <u>Fritz v. Johnston</u>, 209 Ill. 2d 302, 318 (2004). "The mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." <u>Buckner v. Atlantic Plant Maintenance, Inc.</u>, 182 Ill. 2d 12, 23 (1998).

In the present case, in addition to incorporating the allegations contained in the defamation claims, the plaintiff alleged:

"53. On information and belief, Defendant engaged in a scheme with Hartwell Morse and Eric Nolan, and with Plaintiff's political opponents, including Terry Pocius, Mary Church Brown and Paul Pederson, to defame Plaintiff by disseminating false statements about Plaintiff

being involved in a long pattern of misconduct and being unfit to coach in CHLL so as to harm Plaintiff's reputation and to embarrass him in the community."

The plaintiff additionally alleged that, in furtherance of the conspiracy, the defendant intentionally published and otherwise disseminated the defamatory statements at issue.

The plaintiff's allegations fail to state a cause of action for civil conspiracy. "In Illinois, a plaintiff must plead the facts essential to his cause of action; unsupported conclusions are not enough." Buckner, 182 Ill. 2d at 24. Here, the complaint does not allege any concert of action on the part of Hartwell Morse, Eric Nolan, and Paul Pederson. The complaint never identifies Morse, Nolan, or Pederson, or the roles they played in the case. The complaint merely indicates that Nolan and Morse were two of the people to whom the defamatory statements were made and that Pederson was a political opponent. With respect to Pocius and Brown, the complaint indicated that Pocius was a prior Village trustee and that Brown was a resident of the Village. The complaint also indicated that Pocius and Brown informed the plaintiff's running mates, during the plaintiff's campaign for Village trustee, of the defendant's alleged defamatory statements made in March 2005. However, the fact that Pocius and Brown may have repeated the defendant's alleged defamatory statements is not evidence of a conspiracy. See McClure v. Owens Corning Fiberglas Corp., 188 Ill. 2d 102, 133-34 (1999) ("[a]ccidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy"). The plaintiff has provided nothing more than a conclusory allegation that a conspiracy existed. Such conclusory allegations are not sufficient to state a cause of action for conspiracy. See Buckner, 182 Ill. 2d at 24. Although the trial court dismissed the conspiracy claim on the basis that it was dependent on the defamation claims, we may affirm on any basis appearing

in the record regardless of the trial court's reasoning. <u>Bell Leasing Brokerage, LLC v. Roger Auto Service, Inc.</u>, 372 Ill. App. 3d 461, 469 (2007).

CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County dismissing the plaintiff's claims for defamation <u>per se</u> (counts I and II) and remand for additional proceedings consistent with this opinion. However, we affirm the dismissal of the plaintiff's claim for civil conspiracy (count III).

Affirmed in part and reversed in part; cause remanded.

BOWMAN and HUTCHINSON, JJ., concur.