2020 IL App (2d) 181017-U
No. 2-18-1017
Order filed January 22, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ABDUL MOHAMMED, | ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17-L-356 |
| | ) | |
| HAMDARD CENTER FOR HEALTH AND HUMAN SERVICES, MOHAMMED HAMID, KIRAN SIDDIQUI, MARYAM MIRZA, HAMDIA MIRZA, IMRAN MIRZA, FARHEEN FATHIMA, and ICNA RELIEF USA, | ) ) ) ) ) ) ) | |
| | ) | Honorable |
| | ) | Robert G. Kleeman, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1     *Held*: Trial court neither erred in dismissing fourth-amended complaint nor abused its discretion in denying motion to reconsider and for leave to amend: plaintiff's vague and conclusory allegations failed to state claims of defamation *per se*, defamation *per quod*, intentional infliction of emotional distress, civil recovery for hate crimes, and civil conspiracy.

¶ 2     Plaintiff, Abdul Mohammed, appeals *pro se* from the judgment of the circuit court of Du Page County dismissing his complaint,[1] denying his motion to reconsider, and denying his motion for leave to file another complaint.  We affirm.

¶ 3                               I. BACKGROUND

¶ 4     Plaintiff filed a six-count complaint against defendants, (1) the Hamdard Center for Health and Human Services (Hamdard Center) (2) Mohammed Hamid, Kiran Siddiqui, Maryam Mirza, Hamdia Mirza, Imran Mirza, (3) his former wife, Farheen Fathima, and (4) ICNA Relief USA (Islamic Circle of North America Relief USA (ICNA)), (collectively, the Hamdard defendants). The complaint alleged in count I defamation *per se*, in count II defamation *per quod*, in count III intentional infliction of emotional distress (IIED), in count IV a hate crime, in count V a hate crime, and in count VI a civil conspiracy.  Plaintiff filed for a dissolution of marriage in June 2016. As part of that proceeding, plaintiff sought custody of their three children.  The Hamdard Center operated a domestic violence shelter.  Maryam was its director, Hamid was the CEO, and Siddiqui was the COO.  Hamdia was a counselor at the Hamdard Center who was assigned to Fathima. ICNA provided shelter to families in domestic disputes, but, because it could not house children, it placed Fathima at the Hamdard Center.

¶ 5     Pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)), all defendants moved to dismiss the respective claims against them.  The trial court granted the motions and dismissed the complaint entirely.  The court further denied plaintiff's motion to

---

[1] Although the pleading was entitled "second-amended complaint," it was actually plaintiff's fourth complaint, making it his third-amended complaint.  We refer to it as the complaint.

reconsider and his motion for leave to file another complaint. Plaintiff, in turn, filed a timely notice of appeal.

¶ 6                                    II. ANALYSIS

¶ 7                          A. Dismissal of Complaint

¶ 8     On appeal, plaintiff contends *pro se* that the trial court erred in dismissing his complaint, denying his motion to reconsider, and denying him leave to amend the complaint.

¶ 9     A section 2-615 motion to dismiss tests the legal sufficiency of a complaint based on defects apparent on its face. *Slay v. Allstate Corp.*, 2018 IL App (1st) 180133, ¶ 29. A section 2-615 motion presents the question of whether the facts alleged, when viewed in the light most favorable to the plaintiff, are sufficient to state a claim upon which relief may be granted. *Slay*, 2018 IL App (1st) 180133, ¶ 29. A cause of action should not be dismissed unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recover. *Slay*, 2018 IL App (1st) 180133, ¶ 29. Although a plaintiff is not required to set forth evidence in his complaint, he must allege sufficient facts to bring a claim within a legally recognized cause of action. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006). We review *de novo* an order granting a section 2-615 motion to dismiss. *Poo-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009).

¶ 10                     1. Count I: Defamation *Per se*

¶ 11    To state a defamation claim, a plaintiff must allege facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that the publication caused damages. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). A defendant's statement must harm a person's reputation to the extent that it lowers the person in the eyes of the community or deters the community from associating with

him.  *Green*, 234 Ill. 2d at 491.  A statement is defamatory *per se* if its harm is obvious and facially apparent.  *Green*, 234 Ill. 2d at 491.  There are five categories of *per se* defamatory statements: (1) words that impute the commission of a crime, (2) words that impute an infection of a loathsome communicable disease, (3) words that impute that a person is unable to perform, or lacks integrity in performing, his employment duties, (4) words that impute that a person lacks ability, or otherwise prejudices that person, in his profession, and (5) words that impute that a person had engaged in adultery or fornication.  *Green*, 234 Ill. 2d at 491-92.

¶ 12    Plaintiff's defamation *per se* allegations are based on what he claims are false assertions that he sexually abused his wife and daughters.  The allegedly defamatory *per se* statements impute commission of crimes or prejudice plaintiff in his profession.

¶ 13    Although a complaint for defamation *per se* need not set forth the allegedly defamatory words exactly, the substance of the statement must be pled with sufficient precision and particularity as to permit initial judicial review of its defamatory content.  *Green*, 234 Ill. 2d at 492.  Precision and particularity are also necessary so the defendant may properly answer and identify any potential affirmative defenses.  *Green*, 234 Ill. 2d at 492.  The preliminary construction of an allegedly defamatory statement is a question of law, and our review is *de novo*. *Green*, 234 Ill. 2d at 492.  Where a plaintiff pleads defamation *per se* based upon information and belief, he must also allege the factual basis supporting that belief because a properly pled claim for defamation *per se* relieves the plaintiff of proving actual damages.  *Green*, 234 Ill. 2d at 495.

¶ 14    Count I alleged four instances of defamation *per se*.  First, plaintiff alleged that, in October 2016, the Hamdard defendants falsely told his two eldest daughters that he had sexually abused Fathima.  Plaintiff did not specify which statements were attributable to which defendant. Accordingly, defendants did not know precisely what each was alleged to have said or how to

adequately respond. Because the allegations were neither precise nor particular, plaintiff did not properly allege a *per se* defamation claim based on a vague allegation of the statements in October 2016.

¶ 15    Second, plaintiff alleged that, in January 2017, three unidentified members of his mosque told him that ICNA and the Hamdard Center had told them that he was sexually abusing his children. They also accused him of raping his wife and spying on Pakistan for the United States. Again, those allegations failed to specify with particularity who said what to whom. Plaintiff failed to identify the three members of his mosque or attribute particular statements to specific defendants. Thus, those allegations did not state a claim for defamation *per se*.

¶ 16    Third, plaintiff alleged that, in February 2017, Maryam, as the director of the Hamdard domestic violence shelter, falsely reported to DCFS that plaintiff had sexually abused one of his daughters. Plaintiff alleged that the false statement was not privileged, because it was not made in good faith.

¶ 17    A defamatory statement is not actionable if it is privileged. *Dobias v. Oak Park & River Forest High School District 200*, 2016 IL App (1st) 152205, ¶ 106. A qualified privilege is based on a policy of promoting honest communications of false information in certain circumstances to facilitate the availability of correct information. *Dobias*, 2016 IL App (1st) 152205, ¶ 107. A qualified privilege generally applies where society's interest in compensating someone for loss of reputation is outweighed by a competing interest that demands protection. *Dobias*, 2016 IL App (1st) 152205, ¶ 107. If it is apparent on the face of the complaint, a qualified-privilege defense can be relied on as a basis for a section 2-615 motion to dismiss. *Dobias*, 2016 IL App (1st) 152205, ¶ 106. A plaintiff claiming that a defendant abused a qualified privilege must allege a direct intent to injure another or a reckless disregard of the plaintiff's rights and of the

consequences that might result. *Dobias*, 2016 IL App (1st) 152205, ¶ 108. Reckless disregard includes the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material only to the proper parties. *Dobias*, 2016 IL App (1st) 152205, ¶ 108.

¶ 18     Here, plaintiff alleged that Maryam's defamatory statements to DCFS were not privileged, because they were not made in good faith. However, plaintiff did not allege that Maryam made the statements with any intent to injure him or with reckless disregard of his rights or the consequences of those statements. Nor did plaintiff allege that Maryam failed to properly investigate the truth of her statements to DCFS. Thus, the allegations about the February 2017 statements to DCFS did not state a claim for defamation *per se*.

¶ 19     Finally, count I alleged that, in April 2017, plaintiff's employer told him that he need not report to work because the business could not have a child molester making deliveries to its customers. Plaintiff further alleged that, upon information and belief, one or more of the Hamdard defendants falsely told his employer that he was a child molester. Those allegations did not state a claim for defamation *per se*, because plaintiff failed to allege the specific facts that informed his belief, including which specific defendant said what to whom.

¶ 20     Because plaintiff failed to allege a viable claim for defamation *per se*, the trial court properly dismissed count I.

¶ 21                          2. Count II: Defamation *Per Quod*

¶ 22     A defamation *per quod* claim is proper where a statement is defamatory on its face but does not fall into one of the limited categories of *per se* defamatory statements. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 103 (1996). However, because damage to the plaintiff's reputation is not presumed, the plaintiff must plead and prove special damages. *Bryson*, 174 Ill. 2d at 103.

¶ 23    In count II, plaintiff essentially reiterated his allegations from count I and alleged further that those statements caused "irreparable injury to his reputation at his place of worship and within his community", were intended to harm him, and caused him a loss of $7000 income. Plaintiff failed to specify any special damages other than the lost income. Although alleging a specific dollar amount of lost income is sufficient to plead special damages (see *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 60), plaintiff never alleged which of the Hamdard defendants made defamatory statements to his employer. He also did not identify anyone who potentially made the statements on the Hamdard Center's behalf. Thus, he also failed to state a claim for defamation *per quod* as to the lost income.

¶ 24                                3. Count III: IIED

¶ 25    To state a claim for IIED, a plaintiff must allege that the defendant's conduct was truly extreme and outrageous, that the defendant intended that his conduct inflict severe emotional distress or knew that there was high probability that it would, and that the conduct actually caused severe emotional distress. *Schweihs v. Chase Home Financial*, LLC, 2016 IL 120041, ¶ 50. It is well-established that the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Schweihs*, 2016 IL 120041, ¶ 51. However, it is not enough that the defendant acted with tortious or criminal intent, or that he intended to inflict emotional distress, or even that he acted with malice or a degree of aggravation that would support a claim for punitive damages for another tort. *Schweihs*, 2016 IL 120041, ¶ 51. Liability has been found only when the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Schweihs*, 2016 IL 120041, ¶ 51.

¶ 26     Here, plaintiff generally alleged that defendants' conduct in accusing him of sexual abuse of his daughters and former wife was extreme and outrageous, intended to harm him, and caused him depression, humiliation, severe mental anguish, and severe physical and emotional distress. Those general allegations of extreme and outrageous conduct were certainly insulting but come nowhere close to satisfying the requirements of a claim for IIED.  Additionally, alleging merely that defendants intended to harm him, or that their conduct justified punitive damages, did not alone meet the standard for pleading a claim for IIED.  Thus, the trial court properly dismissed count III.

¶ 27                    4. Count IV: Hate Crime—Hamdard Defendants

¶ 28     We begin by noting that, although count IV seeks relief against Fathima, it contains no allegation of wrongdoing related to her.  Thus, the trial court properly dismissed that count as to Fathima.

¶ 29     Section 12-7.1(c) of the Criminal Code of 2012 allows a person to bring a civil action if he is a victim of one of several enumerated hate crimes.  720 ILCS 5/12-7.1(c) (West 2016); see also *Ali v. Wal-Mart Stores, Inc.*, No. 04 C 7930, 2005 WL 2318905, at *2 (N.D. Ill. Sept. 21, 2005).

¶ 30     Plaintiff alleged generally that the Hamdard defendants submitted a false report to DCFS and did so based on his national origin and religion, but he does not explain how that qualifies as one of the hate crimes listed in section 12-7.1(c).  Plaintiff failed to allege what hate crime was committed or by whom.  His general allegation was not sufficient to alert any specific defendant with what he or she was charged and to allow an adequate response.  Thus, the trial court properly dismissed count IV.

¶ 31                    5. Count V: Hate Crime—ICNA

¶ 32    Count V alleged that someone from ICNA called plaintiff and threatened to kill him and his family members living in India.  However, he never alleged that the threat was based on his Indian descent.  His allegation that he was in a class protected by section 12-7.1, without more, did not state a claim for damages under that provision.  See *Ali*, No. 4 C 7930, 2005 WL 2318905, *2.  Thus, count V was properly dismissed.

¶ 33                                6. Count VI: Civil Conspiracy

¶ 34    To state a claim for civil conspiracy, a plaintiff must allege (1) a combination of two or more persons, (2) for the purpose of accomplishing some concerted action for either an unlawful purpose or a lawful purpose by unlawful means, and (3) in furtherance of which, one of the conspirators committed an overt tortious or unlawful act.  *Miller v. Hecox*, 2012 IL App (2d) 110546, ¶ 41.  Because civil conspiracy is an intentional tort, accidental, inadvertent, or negligent participation in a common scheme does not amount to a conspiracy.  *Hecox*, 2012 IL App (2d) 110546, ¶ 43.  It is essential that there be an agreement to accomplish something unlawful or something lawful by unlawful means, as well as a tortious act.  *Hecox*, 2012 IL App (2d) 110546, ¶ 43.  A complaint for civil conspiracy must contain more than the conclusion that there was a conspiracy.  *Green v. Rogers*, 384 Ill. App. 3d 946, 967-68 (2008), *rev'd* on other grounds, 234 Ill. 2d 478 (2009)).  It must allege specific facts from which the existence of a conspiracy may properly be inferred.  *Green*, 384 Ill. App. 3d at 968.  Thus, the mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss.  *Green*, 384 Ill. App. 3d at 968.

¶ 35    Here, plaintiff alleged the conclusion that defendants agreed to accomplish, by concerted acts, various tortious acts against him.  That is precisely the type of conclusion that is insufficient to state a claim for civil conspiracy.  See *Green*, 384 Ill. App. 3d at 968.  Plaintiff failed to include

specific allegations of a common unlawful purpose or lawful purpose be unlawful means that might give rise to a conspiracy. The defect justified dismissal of the civil-conspiracy claim.

¶ 36                         B. Motion to Reconsider

¶ 37    Plaintiff sought reconsideration of the dismissal of his complaint, by filing a motion offering additional factual allegations. A motion to reconsider must bring to the trial court's attention (1) newly discovered evidence, (2) changes in the law, or (3) errors in the court's previous application of existing law. *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 25. Our standard of review is abuse of discretion where the motion to reconsider is based on new evidence, facts, or legal theories not presented in prior proceedings. *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 80. An abuse of discretion occurs only when the court acts so arbitrarily that no reasonable person would take the court's position. *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 12. Here, plaintiff did not assert any new law or identify any error in the trial court's application of existing law. The court found that, because those allegations were just as vague and conclusory as those already pled, defendants could not effectively respond. We agree and conclude that the court did not abuse its discretion in denying the motion to reconsider.

¶ 38              C. Motion for Leave to File Another Complaint

¶ 39    Although leave to file an amended complaint generally should be liberally granted, a party's right to amend is not absolute or unlimited. *Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 39. The decision whether to grant leave to amend a complaint rests within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of that discretion. *Altas*, 2019 IL App (1st) 180939, ¶ 39. To determine whether the court abused its discretion in denying leave to amend a pleading, we consider (1) whether the proposed amendment cures any defects in the pleading, (2) whether the party opposing the amendment would be

surprised or prejudiced, (3) the timeliness of the proposed amendment, and (4) whether the party seeking leave to amend had previous opportunities to amend. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 40 The trial court, in denying plaintiff leave to file another complaint, emphasized that the proposed allegations were still vague, preventing defendants from responding effectively. The court added that, if it allowed plaintiff to file another complaint, the proposed allegations would make it impossible for defendants to ascertain their alleged wrongdoing.

¶ 41 Clearly, plaintiff's proposed allegations, which were as vague as those in his previous complaint, would not have cured the defects in that complaint. Defendants would also have been prejudiced by having to again speculate as to what they were alleged to have done and to mount a defense thereto. Plaintiff already had been given the opportunity to file three amended complaints, the latter two with the assistance of counsel. Yet, his failure to properly allege a valid claim against any defendant resulted in repeated dismissals. Finally, although plaintiff's proposed amendment was arguably timely, that factor alone does not show that the trial court abused its discretion in denying him leave to file yet another amended complaint. Considering the four factors are collectively, we conclude that the denial of the motion to amend was not an abuse of discretion.

¶ 42 For the foregoing reasons, the trial court did not err in dismissing in its entirety plaintiff's complaint. Nor did it abuse its discretion in denying plaintiff's motion for reconsideration or for leave to amend.

¶ 43                                    III. CONCLUSION

¶ 44 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 45 Affirmed.